### In re HUBER OIL OF LOUISIANA, INC., Debtor.

### Huber Oil Of Louisiana, Inc., Edward Wade Nelson, and Kathleen Ann Nelson, Plaintiffs,

### v.

### State of Louisiana, Department of Revenue, and Whitney National Bank, Defendants.

Bankruptcy No. 02–21192.
Adversary No. 04–2001.

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

May 21, 2004.

Gerald Casey, Lake Charles, LA, for Huber Oil of Louisiana, Inc.

Ronald J. Bertrand, Lake Charles, LA, for Edward & Kathleen Nelson.

Barry Kelly, Baton Rouge, LA, for State of Louisiana, Dept. of Revenue.

## REASONS FOR DECISION

GERALD H. SCHIFF, Chief Judge.

Huber Oil of Louisiana, Inc. ("Huber") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 17, 2002. Edward Wade Nelson and Kathleen Ann Nelson ("Nelson", and with Huber, "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 21, 2003. The Debtors filed this Complaint against the State of Louisiana, Department of Revenue ("State") and Whitney National Bank ("Whitney") in order to reform certain documents.

Presently before the court are the **MOTION TO DISMISS ADVERSARY PROCEEDING FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FAILURE TO JOIN A PARTY UNDER RULE 19 AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION** ("Motion to Dismiss") filed by the State and a **MOTION FOR SUMMARY JUDGMENT** filed by the Debtors. A hearing on both matters was held on April 29, 2004. After hearing argument of counsel, both matters were taken under advisement.

## JURISDICTION

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334. The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## BACKGROUND

On October 12, 2001, the Debtors entered into an Agreement to Purchase and Sell ("Agreement") in which Nelson agreed to purchase and Huber agreed to sell certain real property located in Calcasieu Parish, Louisiana. On November 8, 2001, in accordance with the terms of the Agreement, a Cash Sale Deed was executed by the parties. The Cash Sale Deed was recorded in the conveyance records of Calcasieu Parish the following day. The property description contained in the Cash Sale Deed differed from that contained in the Agreement to Purchase and Sell in that it contained an additional "less and except" provision which excluded certain property ("Omitted Property") from the transfer. According to the Debtors, they did not intend to exclude the Omitted Property from the transfer. They contend that the Omitted Property is an important portion of the commercial property and the purchase price was intended to include the acquisition of the Omitted Property.

On the same day as the Cash Sale Deed was executed, Nelson granted a mortgage on the transferred property in order to secure Whitney's loan to Nelson. The legal description of the property in the Act of Collateral Mortgage matched that in the Cash Sale Deed, but also excluded the Omitted Property.

Subsequent to the foregoing transactions, on August 2, 2002, the State filed a Notice of State Tax Assessment and Lien ("Notice") in the amount of $588,074.76 against Huber. Pursuant to applicable state law, the lien arising from such filing attached to all property owned by Huber. Thus, as the Omitted Property was not included in the transfer to Nelson, the State's lien attached to the Omitted Property while the mortgage to Whitney did not.

In early 2003, Whitney apparently discovered that the Omitted Property was excluded from the sale and mortgage documents. This omission was brought to the attention of Floyd Roddy, the attorney who prepared both the Cash Sale Deed and Act of Collateral Mortgage. In an effort to correct the situation, as alleged to be authorized by applicable Louisiana law, Mr. Roddy prepared and recorded affidavits of correction to the Cash Sale Deed and Act of Collateral Mortgage. The affidavits of correction were recorded in the conveyance records of Calcasieu Parish on June 24, 2003.

Since the affidavits of correction were recorded subsequent to the filing of the Notice, substantial issues arise whether Whitney's lien on the Omitted Property would be senior or junior to the State's lien. To resolve this latter issue, the Debtors filed this complaint seeking an order reforming both the Cash Sale Deed and the Act of Collateral Mortgage to reflect the actual intent of the parties, and to have such reformation deemed retroactive

to the dates the documents were originally filed. The result of this action would be the elimination of the State's lien on the Omitted Property.

## LAW AND ANALYSIS

The Debtors seek to correct the Cash Sale Deed and Act of Collateral Mortgage pursuant to the provisions of LSA–R.S. 35:2.1, which provides:

A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.

The State first argues the Debtors have failed to state a claim upon which relief can be granted because LSA–R.S. 35:2.1 does not apply to the facts of this case as this was not a "clerical error."

The State further contends that Mr. Roddy, whether through error or negligence, caused the problem which the Debtors complain of and, as such, he is a necessary party to the complaint. This latter position, however, is a secondary issue. If the court finds that the documents can be reformed pursuant to LSA–R.S. 35:2.1,

there is no necessity for the Debtors to assert any action against Mr. Roddy.

### (1) *Clerical Error.*

■ The State argues that the exclusion of the Omitted Property from the transfer and mortgage was not clerical in nature, and, therefore, LSA–R.S. 35:2.1 does not apply. The fact that the statute contains the term "clerical error" as opposed to simply "error" indicates that it was not intended to encompass every error that could occur. The court must therefore determine what differentiates a clerical error from some other type of error.

■ The court could locate no jurisprudence defining the limits of "clerical error." Black's Law Dictionary, however, defines "clerical error" as

> An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination. Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call. A court can correct a clerical error at any time, even after judgment has been entered.

Based upon this definition, and taking a common sense approach to the issue, the court concludes that the statute was intended to apply to errors in writing or copying as opposed to an error arising from some reasoning, determination or thought process. For example, let's say the parties wanted to accomplish a particular result and in order to accomplish that result, execute a document which legally did not accomplish the result intended. Although this would be an error, it would not constitute a clerical error as the parties had intended the action.

In the instant case, while the mistake which occurred was not necessarily a typographical error, the court finds that the uncontroverted evidence clearly establishes that the error was one occurring in the physical preparation of the documents and was not the result of any reasoning, determination or thought process-not one of the interested parties made a conscious and reasoned decision to exclude the Omitted Property from the transactions. It is abundantly clear from the record that the Omitted Property was inadvertently included as a "less and except" provision when all concerned intended that property to be conveyed to Nelson and mortgaged to Whitney. There was never any thought process which resulted in the error.

The State suggests that the fact that an additional "less and except" provision was added to the documents rather than a provision being deleted takes the error out of the realm of a clerical error. The court disagrees. With the use of word processing programs which are currently used by the vast majority of attorneys, the court believes it is just as likely to inadvertently "paste" a provision into a document as it is to "cut" one.

The affidavits of all parties involved, including Mr. Roddy, lead to the inescapable conclusion that the exclusion of the Omitted Property occurred during the physical preparation of the documents and that no reasoning or thought process was involved. The entire record of this proceeding clearly reflects an intent for Huber to transfer and Nelson to receive the Omitted Property. The court therefore finds that the inclusion of the Omitted Property in the less and except clause was a clerical error and the correction of such error is within the reach of LSA–R.S. 35:2.1.

■ The State also takes the position that the allegations contained in Whitney's lawsuit against Mr. Roddy must negate

the finding of clerical error. The court again disagrees.

First of all, Whitney's allegations are separate and apart from the issues before the court, have absolutely no connection to the request of the Debtors, and certainly are not binding on the Debtors. Second, the lawsuit by Whitney is obviously a protective measure. In the event this court were to find that the documents could not be reformed, Whitney's only action would be one against Mr. Roddy; Whitney may well have determined that certain time limitations required the filing of that lawsuit. Finally, the allegations made by Whitney are not inconsistent with allegations of the Debtors. Whitney alleged that Mr. Roddy made the mistake "through error, negligence and/or inadvertence." That phrase certainly is sufficient to subsume the statutory language of LSA–R.S. 35:2.1; the State has not established any basis to conclude that Whitney would not have an action against Mr. Roddy if the mistake were deemed a clerical error.

### (2) *Reasonable Reliance.*

■ Pursuant to LSA–R.S. 35:2.1(B), an act of correction made by virtue of the statute "shall be given retroactive effect to the date of recordation of the original act" except that

> the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act.

The correction therefore cannot prejudice the right acquired by the State if the State reasonably relied on the original documents. In the instant case, the State filed its notice of tax assessment which automatically attached to all property owned by Huber. There is no evidence in the record that the State in any way relied

upon the documents originally filed by the Debtors; in fact, the State was likely not even aware of the documents. Counsel for the State acknowledged in oral argument that it would be a virtual impossible task for the State to review the public records prior to the filing of each and every tax assessment lien.

While the court agrees with this latter observation, such fact, however, supports the conclusion that the State did not rely upon the earlier filings. At some point in time, following its established procedure, the State determined that a tax assessment should be filed against Huber for certain unpaid tax liabilities. Without a check of the public records, the necessary documents were prepared and filed, thus creating certain lien rights. Certainly, however, there was no reliance by the State on the status of public recordings prior to filing of the assessment.

For the foregoing reasons, the Cash Sale Deed and Act of Collateral Mortgage may be corrected to accurately reflect the property description as set forth in the affidavits of corrections. Further, such corrections are deemed retroactive to the date the documents were originally filed.

■ Finally, the State argues that the reformation of the documents would violate the constitutional mandate of Article VII, Section 14(A) of the Louisiana Constitution which prohibits "property or things of value of the state" from being "loaned, pledged, or donated" to another except as otherwise provided in the Constitution. The court finds that this argument totally without merit. This constitutional provision clearly relates to voluntary actions taken by the State to dispose of property. The reformation of the documents in this case is not a voluntary disposition of property and the constitutional mandate is not applicable.

## CONCLUSION

For the foregoing reasons, the **Motion for Summary Judgment** filed by the Debtors is **GRANTED**. The **Motion to Dismiss** filed by the State is **DENIED**. Counsel for Debtors is directed to submit an order in conformity with the foregoing reasons within 20 days.