# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-280**

PAMELA BORSKEY VICKERS

VERSUS

WILLIARD HOUSTON VICKERS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 35,650
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

AMY, J., dissents and assigns reasons.

SULLIVAN, J., concurs and assigns written reasons.

REVERSED AND RENDERED.

Walter E. Dorroh, Jr.
Dorroh & Kendrick, a PLC
P. O. Box 1889
Jena, LA 71342
Telephone: (318) 992-4107
COUNSEL FOR:
    Intervenor/Appellee - Homeland Federal Savings Bank

Clayton M. Perkins, Jr.
Perkins & Dupré
19929 Old Scenic Highway
Zachary, LA 70791
Telephone: (225) 658-9602
COUNSEL FOR:
    Plaintiff/Appellant - Pamela Borskey Vickers

**Donald D. McKeithen, Jr.**
**P. O. Box 1919**
**Columbia, LA 71418**
**Telephone:  (318) 649-6862**
**COUNSEL FOR:**
      **Intervenor/Appellee - Homeland Federal Savings Bank**

**THIBODEAUX, Chief Judge.**

Pamela Borskey Vickers appeals the trial court judgment which granted Homeland Federal Savings Bank's previously-filed collateral mortgage priority over her judgment, despite the fact the collateral mortgage listed an incorrect mortgagor at the time it was recorded in the parish mortgage records. For the following reasons, we reverse and render.

## I.

## ISSUE

Does the error of listing an incorrect owner of immovable property in a recorded collateral mortgage constitute a substantive error that prevents the date of its correction from being given retroactive effect to the date the collateral mortgage was originally recorded?

## II.

## FACTUAL BACKGROUND

Mr. and Mrs. Vickers obtained a divorce in 2001. Their community property settlement remained unresolved. In 2005, Mr. Vickers granted to a financial institution, Homeland, a collateral mortgage on immovable property separately-owned by him. The collateral mortgage served to secure Mr. Vickers' debt to Homeland. Homeland recorded the collateral mortgage in the LaSalle Parish mortgage records on July 20, 2005. The collateral mortgage, however, incorrectly identified the mortgagor of the immovable property as Automotive Trucks & Tractors, L.L.C., a company that Mr. Vickers solely-owned and in which he served as President. Mr. Vickers signed the collateral mortgage on behalf of Automotive Trucks & Tractors, L.L.C., as its President.

On January 13, 2006, Mrs. Vickers was awarded $92,000.00, in addition to the payment of her attorneys' fees, as full and final settlement of her community property claims. She recorded that judgment in the LaSalle Parish mortgage records on October 16, 2006.

A few months later in 2007, Homeland's collateral mortgage was amended by a notarial act of correction to change the name of the mortgagor from "Automotive Trucks & Tractors, L.L.C." to "Willard Houston Vickers." Mr. Vickers and the notary acknowledged the error in the act of correction, describing it as a "clerical error." It was alleged therein that the collateral mortgage "incorrectly showed that [Mr. Vickers] was signing said Collateral Mortgage as President of Automotive Trucks & Tractors, L.L.C. when in truth and in fact, [Mr. Vickers] was signing said Collateral Mortgage as the Mortgagor, individually, and not as President of Automotive Trucks & Tractors." The notarial act purporting to correct the error was recorded in the LaSalle Parish mortgage records on January 23, 2007.

In May of 2007, Mrs. Vickers moved that her judgment be made executory and requested that a writ of fieri facias be issued to the LaSalle Parish Sheriff, ordering him to seize and sell Mr. Vickers' interest in the immovable property which was also the subject of Homeland's collateral mortgage. Mrs. Vickers' judgment was made executory and the writ was issued; the Sheriff's sale was scheduled to take place in July of 2007. Homeland, however, filed a Petition of Intervention prior to the sale, asserting itself as a secured creditor of Mr. Vickers, holding a first mortgage (the collateral mortgage) on the immovable property that was to be sold. Homeland asserted that its collateral mortgage was superior in rank to Mrs. Vickers' judgment and asserted its privilege to be paid first from any proceeds of the Sheriff's sale of the immovable property.

This matter was decided by the trial court based on the submission of written briefs, stipulated facts, and stipulated exhibits. The trial court rendered a judgment in favor of Homeland, stating therein that it found the collateral mortgage, recorded on July 20, 2005, ranked ahead of and primed the money judgment of Mrs. Vickers' later-recorded judgment.

Mrs. Vickers filed this appeal, alleging the trial court's judgment was erroneous for multiple reasons. She argued the erroneous listing of the mortgagor was a substantive error in the collateral mortgage that, when corrected and subsequently recorded, resulted in the collateral mortgage losing its status as first-ranked. She argues that the collateral mortgage was then ranked according to the recordation date of the notarial act of correction. She adds that because of the incorrect mortgagor, the collateral mortgage should not have been recognized as having a higher rank than hers because it was not an "established" mortgage, pursuant to La.Civ.Code art. 3292,[1] when originally recorded. Finally, Mrs. Vickers contends that since Mr. Vickers' ownership interest in the property was not made a part of the public records because of the error that existed when the collateral mortgage was originally filed, the public records doctrine protects her as a third-party.

Homeland argues that the error listing the limited liability company as the mortgagor of Mr. Vickers' immovable property was not a substantive error. It was, instead, a "clerical" error, resulting from inadvertence that occurred during the physical preparation of the mortgage document. Therefore, according to Homeland, La.R.S. 35:2.1(B), a statute that is relevant to notarial acts of correction, is applicable. According to La.R.S. 35:2.1(B), the effective date of the notarial act of correction will relate back to the original recording date of the collateral mortgage if the error being

_____

[1]This article states that a special mortgage over property a mortgagor does not own is established when the property is acquired by the mortgagor.

corrected is "clerical." Therefore, Homeland argues it maintained its status as the holder of the first-recorded security interest, despite the existence of the error in the original document.

Homeland also refutes Mrs. Vickers' argument that the collateral mortgage was not an "established" mortgage when it was originally recorded. Homeland contends the mortgage was, in fact, established due to the mutual intent of the parties—itself and Mr. Vickers—to create a collateral mortgage on the immovable property. Finally, Homeland asserts that Mrs. Vickers' reliance on the public records doctrine is misplaced because of the lack of any evidence presented to the trial court that she reasonably relied on the original collateral mortgage.

III.

## LAW AND ANALYSIS

The primary issue raised by this appeal is the effect of the error, and its subsequent correction by notarial act, on the rank of the collateral mortgage as a secured interest in Mr. Vickers' property. Specifically, La.R.S. 35:2.1(A) and (B) state the following about notarial acts of correction:

> A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.

> B. *The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act.* The act of correction shall not alter the true agreement and intent of the parties.

4

(Emphasis added).

The first question to be resolved is whether the notarial act of correction served to correct a clerical or substantive error. If the error was clerical, then the notarial act of correction that sought to amend the collateral mortgage is to be given retroactive effect to the date of recordation of the original act. La.R.S. 35:2.1(B). This would preserve the primacy in rank of Homeland's collateral mortgage.

Here, the notarial act of correction substituted the immovable property's true owner, Mr. Vickers, for the erroneously-stated owner, Automotive Trucks & Tractors, L.L.C. Homeland stipulated that at no time did the limited liability-company own the immovable property; however, no explanation was offered as to why this error was made.

We find that the error at issue does not constitute a clerical error, but is a substantive one. *Black's Law Dictionary*, (8th ed.), provides, in part, that a clerical error is "[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." In this case, there were repeated references to the limited liability company as the mortgagor throughout the multiple pages of the collateral mortgage. Also, as stated earlier, Mr. Vickers signed the collateral mortgage expressly on behalf of the company in his capacity as its President. These references evidence an express determination by those involved with the creation of the collateral mortgage, including Mr. Vickers, that the limited liability company be recognized as the mortgagor of the property at issue.

Although the parties to the collateral mortgage admitted the misidentification was an erroneous assertion, that alone does not justify classifying such an error as "clerical" in nature. Rather, this was a substantive error because

there is no evidence to suggest that it was an error that resulted from a minor mistake or inadvertence during the document preparation process. *See, e.g., In re Huber Oil of Louisiana, Inc.*, 311 B.R. 440 (Bankr. W.D. La. May 21, 2004). It was a deliberate and repetitive error that even the owner of the company, Mr. Vickers, expressly acknowledged by signing the collateral mortgage in his capacity as the company's President. This suggests that there was a reasoned belief by those entering into the agreement that the limited liability company was the owner/mortgagor of the property at issue. This does not constitute a clerical error.

Homeland desired the collateral mortgage on the immovable property to secure Mr. Vickers' debt. Louisiana Civil Code Article 3290 provides that to establish a conventional mortgage, the individual must have the power to alienate the property. Here, Automotive Trucks & Tractors, LLC did not own the piece of immovable property and, therefore, did not have the power to alienate it. The name of the mortgagor was not merely incorrectly spelled, nor was the description of the property incorrectly copied; rather, the incorrect owner of the immovable property was recorded as the mortgagor. An error of ownership rights does not constitute a minor mistake in writing or copying within the meaning of a clerical error. The error was substantive.

Consequently, we find that the trial court erred in finding that Homeland held a superior security interest in the immovable property at issue. The error in naming the limited liability company as the mortgagor is a substantive error; therefore, La.R.S. 35:2.1 does not apply and the filing date of the notarial act of correction does not relate back to the original date on which the collateral mortgage was recorded. Because of this finding, we do not reach the additional issues asserted by Mrs. Vickers in this appeal.

6

IV.

## **CONCLUSION**

The judgment of the trial court is reversed.

Costs of this appeal are assessed to Homeland Federal Savings Bank.

**REVERSED AND RENDERED.**

NUMBER 09-280

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

PAMELA BORSKEY VICKERS

VERSUS

WILLIARD HOUSTON VICKERS


AMY, J., dissenting.

I respectfully disagree with the majority that, in the factual context of this case, the type of error at issue is a deliberate and willful one. Neither do I find that the correction made reflects a change in intent of the parties.

The record establishes that there was intent to mortgage the property now at issue. Mr. Vickers demonstrated his intent in the Act of Correction which reads as follows:

(1) Page 1 of the above described Collateral Mortgage incorrectly showed the Mortgagor as Automotive Trucks & Tractors, L.L.C., when in truth and in fact, Page 1 should have shown the Mortgagor to be **WILLARD HOUSTON VICKERS**;

(2) Page 13 of the above described Collateral Mortgage incorrectly showed the Mortgagor to be Automotive Trucks & Tractors, L.L.C., when in truth and in fact, the Mortgagor should have been shown to be **WILLARD HOUSTON VICKERS**; and

(3) Page 14 of the above described Collateral Mortgage incorrectly showed that **WILLARD HOUSTON VICKERS** was signing said Collateral Mortgage as President of Automotive Trucks & Tractors, L.L.C. when in truth and in fact, **WILLIARD HOUSTON VICKERS** was signing said Collateral Mortgage as the Mortgagor, individually, and not as President of Automotive Trucks & Tractors, L.L.C.

Homeland affirmed its intent to take a mortgage on the property in its petition for intervention and the joint stipulation of facts. Its intent to mortgage the property is also evidenced in the fact that the bank loaned Mr. Vickers $150,000.00.

Ms. Vickers also acknowledges that intent in the joint stipulation of facts, which reads:

> [The mortgage] was intended by the mortgagor and mortgagee to collateralize the debt owed to HOMELAND FEDERAL SAVINGS BANK set out in paragraph 2 of the original Petition for Intervention. However, at the time the Mortgage was executed and recorded, the mortgagor, Automotive Trucks & Tractors, was not the record owner of the property. The property was actually owned by WILLARD HOUSTON VICKERS individually. The Mortgage of July 20, 2005, was subsequently amended by notarial act which acknowledged the clerical errors and purported to correct the clerical errors with said Notarial Act of Correction[.]

In light of the clear understanding evidenced between all of the parties, and stipulated on the record, I find that the trial court's determination that this was a correction of a clerical error is supported by the record.

I also find that the trial court's determination is consistent with *In re Huber Oil of Louisiana*, 311 B.R. 440 (Bkrtcy. W.D. La., 2004), wherein the court was faced with the question of whether an error was clerical or substantive. In that case, the error was related to a property description. The property description contained in the deed and a subsequent mortgage did not include certain property described in the purchase agreement. Ultimately, the *Huber* court reasoned that the record clearly reflected an intent between the parties to transfer the omitted portion and thus the error was clerical because it did not result from any conscious or reasoned decision to exclude the property. The court found that the transfer and mortgage documents, in addition to, affidavits of the parties were "uncontroverted evidence [that] clearly establishes that the error was one occurring in the physical preparation of the documents and was not the result of any reasoning, determination or thought process- not one of the interested parties conscious and reasoned decision[.]" *Id.* at 444.

Accordingly I find that La.R.S. 35:2.1's retroactive effect applies and the collateral mortgage primes Ms. Vickers judicial mortgage unless the retroactive effect

2

will "prejudice the rights acquired by any third person [here, Ms. Vickers] before the act of correction [was] recorded where the third person reasonably relied on the original act." La.R.S. 35:2.1(B).  Ms. Vickers asserts in brief that when she recorded her "judgment in the LaSalle Parish public records on 10/16/2006, there was no entry in the mortgage records showing Mr. Vickers had a collateral mortgage on his immovable." However, apart from this assertion, there is no evidence in the record that Ms. Vickers relied on the original collateral mortgage.

For these reasons, I believe an affirmation is warranted.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-280


PAMELA BORSKEY VICKERS

VERSUS

WILLIARD HOUSTON VICKERS


SULLIVAN, J., concurring.

I agree with the result reached by Chief Judge Thibodeaux but for different reasons. The Notarial Act Acknowledging Clerical Errors and Correcting Clerical Errors (Notarial Act) was executed by the notary who notarized the mortgage and Mr. Vickers. It simply "acknowledged" that "clerical errors were committed in the Collateral Mortgage" and that the "Collateral Mortgage contained the following clerical errors which should be corrected." The affidavit then itemized three errors which are the use of a corporate name, rather than Mr. Vickers' name individually, in three places in the mortgage. One of those errors is the signature which has Mr. Vickers appearing as corporate representative.

In *In re Huber Oil of Louisiana, Inc.,* 311 B.R. 440 (Bankr. W.D. La. 2004), the court determined that the exclusion of property from a property description in a cash sale and the mortgage which secured the purchase of the property was a clerical error by considering the affidavits of the parties to the transactions. While the *Huber* opinion does not clearly specify who executed affidavits and what each affiant averred therein, it indicates that the affidavits therein say more than the Notarial Act submitted by Homeland Federal Savings Bank (Homeland). The opinion states:

> The affidavits of all parties involved, including [the closing attorney], lead to the inescapable conclusion that the exclusion of the Omitted Property occurred during the physical preparation of the documents and that no reasoning or thought process was involved. The entire record of this proceeding clearly reflects an intent for Huber to transfer and Nelson to receive the Omitted Property. The court therefore finds that the inclusion of the Omitted Property in the less and except clause was a clerical error and the correction of such error is within the reach of LSA-R.S. 35:2.1.

*Id.* at 444.

The Notarial Act does not address the intent of the parties with regard to the mortgage, i.e., was it intended to secure a corporate loan or a personal loan to Mr. Vickers. A review of the mortgage itself does not lead to an answer because, while the title and the signature line of the document indicates that it is a corporate loan, the description of the appearer within the body of the mortgage is Mr. Vickers individually, not the corporation represented by Mr. Vickers. This supports Homeland's claim that a clerical error occurred in the preparation of the mortgage. Furthermore, while the Petition for Intervention itemizes the indebtedness of Mr. Vickers to Homeland, no promissory notes evidencing the alleged indebtedness are attached to the Petition. The indebtedness could be Mr. Vickers' personal debt. However, it could also be a corporate debt, as it is not unusual for the principal of a small corporation to be required to guarantee corporate loans and use personal property as collateral for such loans.

In conclusion, I find that the evidence does not establish that Homeland carried its burden of proof of establishing that the "error" sought to be corrected by the Notarial Act is a "clerical error" and would reverse the judgment of the trial court.

2