SUSAN M. CHEHARDY, Judge.
12This appeal arises in a suit for executo-ry process. At issue is whether a mortgage cancelled from the public records can be reinstated by a notarial act of corree *2 tion. The district court found it could, but we disagree. We reverse the ruling.
FACTS
On January 6, 2006, DDS Construction, LLC (“DDS”) executed a multiple indebtedness mortgage (“Construction Mortgage”) in favor of First National Bank USA (“First National Bank”) to secure several promissory notes on which DDS was the debtor.
On April 29, 2008 First National Bank filed suit in executory process against DDS to seize and sell the property that secured the promissory notes, because DDS had defaulted on the notes.
On November 9, 2009, U.S. Bank National Association, as Trustee for the benefit of certain Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC2 (“U.S. Bank”), intervened in the suit and sought ranking of creditors.
|;jU.S. Bank alleged that part of the property secured by the Construction Mortgage had been sold by DDS to Lena L. Bering on September 29, 2006, specifically Lot 8, Square A, Homewood Place Extension, Parish of St. John the Baptist, State of Louisiana, located at 131 Home-wood Place in Reserve. In connection with the purchase, Bering executed a promissory note on that date in favor of EquiFirstCorporation (“EquiFirst”). To secure the promissory note (hereafter “Bering Note”), Bering granted a mortgage over Lot 8 in favor of EquiFirst on October 17, 2006 (hereafter “Bering Mortgage”).[1]
U.S. Bank further alleged that Equi-First had made U.S. Bank payee on the Bering Note, pursuant to an allonge to the note dated October 28, 2009.[2] MERS was the nominee of EquiFirst and was designated as mortgagee on the Bering Mortgage.[3] According to the petition of intervention, MERS subsequently assigned its right in the Bering Mortgage to U.S. Bank.
U.S. Bank alleged that when DDS sold Lot 8 to Bering, DDS failed to cancel the Construction Mortgage over the property. As a result, when First National Bank filed this executory process action, Lot 8 was included as part of the property seized due to the failure of DDS to pay amounts due under the loans extended to DDS by First National Bank. On June 10, 2009, the St. John the Baptist Parish Recorder of Mortgages cancelled the Construction Mortgage over Lot 8, pursuant to a request for cancellation submitted by First National Bank.
U.S. Bank asserted that First National Bank improperly attempted to reinstate its cancelled Construction Mortgage on June 15, 2009, by filing a Notarial |4Act of Correction executed by a vice president of First National Bank. That Notarial Act of Correction averred that the Construction Mortgage remains in full force and effect over Lot 8.
*3 A second Notarial Act of Correction was executed by the notary who executed the original cancellation of the mortgage, dated October 28, 2009, and recorded on October 29, 2009.
U.S. Bank contended the Notarial Acts of Correction did not reinstate the can-celled Construction Mortgage and that the Construction Mortgage no longer has any effect against third parties. Accordingly, U.S. Bank asserted, the Bering Mortgage is the superior mortgage encumbering Lot 8, so that U.S. Bank is entitled to first payment of any proceeds from judicial sale of the property.
U.S. Bank requested that the court rank the Bering Mortgage and the Construction Mortgage pursuant to La. C.C.P. art. 2592(7).[4]
A hearing on the motion to rank creditors was held on November 18, 2009. No testimony was presented at the hearing; counsel relied on documents attached to the pleadings as support for their arguments.
Counsel for U.S. Bank stated the sole issue is whether First National Bank can voluntarily cancel the mortgage and then retroactively reinstate that mortgage using the notarial act of correction statute. U.S. Bank argued that a notarial act of correction can be used only to affect a recorded document that remains in effect as notice to third parties. Once a mortgage is can-celled, the mortgage document no longer affects third parties. While a change in the document may be made to correct an error, the status of the document cannot be altered. Further, U.S. Bank asserted, once a recorded document is cancelled the recorder of mortgages or clerk |fiof court does not have the power to reinstate it. Any reinstatement would have to be done by judicial order, but Louisiana has no statutory or jurisprudential law that allows a cancelled mortgage to be reinstated by a unilateral act.
In opposition, counsel for First National Bank argued that U.S. Bank had failed to produce proof that it has any interest in the case. There was no original or certified documentary proof of its interest in evidence. First National Bank also contradicted U.S. Bank’s claim that there is no law allowing reinstatement of a can-celled mortgage. Rather, First National Bank asserted, the 1947 case cited by U.S. Bank had been superseded by a law passed in 1987, specifically La. R.S. 35:2.1, that allows any and all notarial acts that affect movable or immovable property, or any rights therein, to be corrected by notarial act.
Ruling from the bench, the district court granted judgment in favor of the plaintiff, First National Bank USA, and against the intervenor, U.S. Bank National Association, denying the motion to rank creditors, with prejudice and at its cost. The judge gave the following oral reasons for judgment:
The court finds that R.S. 35:2.1, regarding a notarial act, which the act of correction is a notarial act, which affects movable or immovable property, does not in any way except, E-X-C-E-P-T, acts of corrections regarding cancellations of mortgage.
Further, there’s been no showing that U.S. Bank relied on this error and there’s been no prejudice shown during the five days before the act of correction was passed.
*4 The court directed that the sheriffs sale of the property, already scheduled for November 18, 2009, the date of the hearing, go forward and that all proceeds from the judicial sale of 131 Homewood Place, Reserve, Louisiana be placed into the registry of the court pending a final judgment on appeal.
IfiThe court’s oral ruling was rendered in a written judgment signed on January 12, 2010.[5] On January 25, 2010, the district court ordered that the judgment be designated as final and appealable, finding there is no reason for delay because all issues and allegations asserted by U.S. Bank National Association have been adjudicated.
U.S. Bank has appealed, raising the following assignments of error:
1. The district court erred by holding that a mortgage cancelled from the mortgage records at the request of the mortgagee could be retroactively reinstated into the public records by an act of correction;
2. The district court erred by holding that a mortgagee’s voluntary cancellation of its mortgage was a clerical error that could be retroactively remedied, to the detriment of other creditors, through an act of correction under Louisiana Revised Statutes 85:2.1;
3. The district court erred by allowing First National Bank to use La. R.S. 35:2.1 to alter a document that was unilaterally executed and recorded by the bank, when the statute applies only to documents executed by two or more parties.
U.S. Bank contends, first, La. R.S. 35:2.1 allows acts of correction to remedy only clerical errors in recorded documents and, second, the statute prohibits acts of correction from being used to alter unilaterally executed and recorded documents.
U.S. Bank argues that First National Bank cannot use an act of correction, executed over three-and-one-half months after the cancellation, to retroactively 17reinstate its mortgage into the public records and give itself priority over another creditor.
In opposition, First National Bank asserts the district court did not err because the text of the statute does not limit the act of correction from being used to reinstate a cancelled mortgage or to correct a unilateral act. First National Bank contends the limitations that U.S. Bank suggests be placed on La. R.S. 35:2.1 would hamper, if not defeat, the clear legislative purpose in enacting the statute — to allow mistakes to be retroactively corrected, while protecting those who reasonably rely on the original act containing the error. First National Bank argues that La. R.S. 35:2.1 is intended to change perceived inequities arising out of the Public Records Doctrine.
First National Bank also takes issue with documentary evidence produced/not produced by U.S. Bank. First National Bank, however, has neither appealed nor answered the appeal to protest the district court’s acceptance of U.S. Bank’s evidence, so we do not consider that question.
LAW AND ANALYSIS
La. R.S. 35:2.1, added to the Revised Statutes by Acts 1984, No. 245, § 2, provides for an affidavit of correction to be executed to correct clerical errors in notarial acts affecting property or other rights. It specifies the following:
A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or in *5 corporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by \%any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.
D. This Section shall be in addition to other laws governing executory process. [Emphasis added.]
The key phrases in the statute are “clerical error,” paragraph A; “shall not prejudice the rights acquired by any third person before the act of correction is recorded,” paragraph B; and “shall not alter the true agreement and intent of the parties,” paragraph B.
It is well established that when a statute is clear and free of ambiguity, it must be given effect as written. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. When interpreting a statute, the court should give it the meaning the Legislature intended. It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless-A statute’s meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and will carry out the Legislature’s intention. Ultimately, it is clear that the law provides that |9the statute be accorded a fair and genuine construction. A reasonable construction in light of the statute’s purpose is what is required. [Citations omitted.]
ABL Management, Inc. v. Board of Sup’rs of Southern University, 2000-0798, pp. 5-7 (La.11/28/00), 773 So.2d 131, 135.
In City of Harahan v. State ex rel. Div. of Admin., 08-106, p. 9 (La.App. 5 Cir. 5/27/08), 986 So.2d 755, 761, this Court stated,
We are not aware of any statute or other authority permitting amendment of the substantive terms of a contract via an Act of Correction. Further, it *6 would be illogical to find that the correetion of a clerical error would be subject to more stringent requirements, as set forth in LSA-R.S. 35:2.1, than correction or amendment of substantive terms in an agreement.
In Vickers v. Vickers, 2009-280, p. 6 (La.App. 3 Cir. 11/18/09), 25 So.3d 210, 213, the third circuit held that naming the wrong party as mortgagor in a mortgage was a substantive error and could not be corrected by an act of correction: “An error of ownership rights does not constitute a minor mistake in writing or copying within the meaning of a clerical error. The error was substantive.”
Here, the Act of Correction attempted to revoke the cancellation of the mortgage as to Lot 8. An obligation that burdened Lot 8 had been removed, then was attempted to be restored. That is a substantive change, not a clerical error, and as such it could not be performed by a notarial act of correction. This limitation creates a safeguard against the improper alteration of recorded instruments.
DECREE
For the foregoing reasons, the judgment is reversed. Judgment is rendered in favor of the appellant, U.S. Bank National Association, and its Motion to Rank Creditors is granted. U.S. Bank National Association will be given first priority over proceeds of the November 18, 2009 judicial sale of Lot 8, Square A, |inHomewood Place Extension, Parish of St. John the Baptist, State of Louisiana, located at 131 Homewood Place in Reserve.
In all other respects, the case is remanded for further proceedings. Costs of this appeal are assessed against the appellee, First National Bank USA.

REVERSED AND REMANDED.

|,LIMITED REHEARING GRANTED. REHEARING GRANTED FOR THE LIMITED PURPOSE OF CONSIDERATION OF ADDITIONAL ARGUMENTS FOR AFFIRMING THE TRIAL COURT’S JUDGMENT; APPELLATE JUDGMENT OF NOVEMBER 9, 2010 MAINTAINED.

Considering the Application for Rehearing, rehearing is granted for the sole and limited purpose of considering issues that were not addressed in our original opinion. After a careful review of the record, as well as consideration of the briefs filed and the arguments made by the parties, we affirm our original opinion.
After this Court reversed the district court’s ruling denying U.S. Bank’s motion to rank creditors, First National Bank filed an application for rehearing arguing that this Court’s opinion erroneously failed to consider its additional arguments for affirming the trial court’s judgment. We originally declined to consider these because First National Bank, the appellee, neither appealed nor answered the appeal. First Nat. Bank, USA v. DDS Const., LLC, 10-204, p. 7 (La.App. 5 Cir. 11/9/10), 92 So.3d 1, 2010 WL 4486367.
Although First National Bank, the ap-pellee, did not seek to modify, revise, or reverse the judgment, it “may assert, in support of the judgment, any argument supported by the record, although [it] has not appealed, answered the appeal, or applied for supervisory writs.” La.C.C.P. art. 2133(B). Therefore, pursuant to La. C.C.P. art. 2133(B), we grant a limited rehearing to consider First National Bank’s arguments concerning U.S. Bank’s alleged failure to prove the debt it was owed and its security interest.
12At the hearing on the ranking of mortgages, the trial judge questioned U.S. Bank’s. interest. First National Bank’s counsel responded that there was no evi *7 dence that U.S. Bank had any interest in this case. All he had seen thus far were allegations, claims, and some photocopied documents. Counsel was evidently referring to documents that U.S. Bank attached to its petition for intervention and its motion to rank creditors. Also, counsel complained that there was no evidence as to the amount of indebtedness owed to U.S. Bank. Thereafter, First National Bank’s counsel discussed the mortgage cancellation issue. In concluding the argument, First National Bank’s counsel offered, filed, and introduced its exhibits into evidence. The trial judge responded: “And I don’t think there’s any dispute as to the, any of the documents on either side, right?”
U.S. Bank’s counsel replied there was no objection. However, First National Bank’s counsel argued that U.S. Bank had not established that it was the holder of the note or the balance due U.S. Bank. He stated that he had no problem with the documents that were recorded or the act of correction.
The trial judge did not rule on the admissibility of the documents at that time. Rather, both counsels discussed the legality of the mortgage cancellation. Finally, U.S. Bank’s counsel stated: “Now as far as the evidentiary issues, Your Honor, all of our attachments to our memorandum are certified copies, and to the extent it’s necessary, we would ask that they be moved into evidence at this time.”
First National Bank’s counsel then responded:
I’ll object to the copies of the note and the note has got to be an original. Object to a copy of the note. Other than that, I’ve got no objection.
|sThe trial judge ruled that she would allow a substitution of the original. Thus, she implicitly admitted U.S. Bank’s documents into evidence subject to allowing substitution with the original note. Following further discussion by the parties, the trial judge stated that she had the opportunity to read the memoranda, review the record, and was prepared to rule at that time if the matter was submitted. First National Bank’s counsel agreed that the matter was submitted. Counsel for U.S. Bank expressed no opposition nor did he submit the original of the promissory note. Finding the matter was submitted, the trial court denied U.S. Bank’s motion and ruled in favor of First National Bank as far as the ranking was concerned.
On appeal, in its appellee’s brief, First National Bank argued there were additional reasons to affirm the trial court’s judgment that were clear from the record. The appellee argued that there was no evidence to establish that any amounts were due under the note. Appellee asserted that the original note was necessary because without the original note there was no presumption regarding the amount due.
The purpose of the proceeding, however, was to rank creditors rather than to establish the amount of the debt owed to U.S. Bank. In a contest involving the ranking of mortgages, each claimant has the burden of proving the effective date of his mortgage as to third persons. Texas Bank of Beaumont v. Bozorg, 457 So.2d 667, 672 (La.1984). The sole requirement to give the mortgagee his rank is the recorder’s inscription of the mortgage. Casey v. National Information Services, Inc., 04-0207, p. 6 (La.App. 1 Cir. 6/10/05), 906 So.2d 710, 715, writ denied, 05-2210 (La.3/24/06), 925 So.2d 1235 (citation omitted). Thus, the amount due under the note was not pertinent to the instant hearing. *8 [1]
Furthermore, in our original opinion, we remanded this matter for further proceedings, at which time, the trial judge can determine the proper allocation of the proceeds from the judicial sale.
Appellee also asserted on appeal that the original note was necessary because without the original note there was no evidence to prove that U.S. Bank was entitled to enforce that instrument.
At the hearing below, with the exception of the failure to introduce the original promissory note, First National Bank’s counsel ultimately did not object to any of the evidence submitted by U.S. Bank.
U.S. Bank’s evidence regarding its entitlement to enforce the note consisted of three documents: the photocopy of an “Al-longe to Note” and two affidavits. The “allonge” was not attached to the note. It provided for an October 28, 2009 endorsement of a note by the servicing attorney in fact for EquiFirst Corporation, the original mortgage holder, in favor of U.S. Bank. Appellee argued on appeal that the fact that the “allonge” was produced separately from the note to which it should have been attached meant that the document attached to U.S. Bank’s trial court memorandum, even if it had been the original, was not an endorsement of the instrument sufficient to show that U.S. Bank was a holder or party entitled to enforce the instrument. And, production of the original note at this late date would |finot cure this defect because the “allonge” was not attached to the note when the endorsement was made.
U.S. Bank’s evidence also included two affidavits that proved U.S. Bank’s entitlement to enforce the note.
The first affidavit was executed by Shannon Langley, in her capacity as Assistant Vice President of U.S. Bank. She attested that the attached promissory note was a true and correct copy of the September 29, 2006 promissory note executed by Ms. Bering. She also attested that all of the allegations contained in the petition for intervention were true and correct to the best of her knowledge, information and belief, and that her verification would serve as due proof of any allegation needed or required by law.
The petition for intervention, which attached supporting documentation to which Ms. Langley attested as true and correct, stated that EquiFirst Corporation made U.S. Bank its payee on the note pursuant to an “allonge” dated October 28, 2009. Referring to the EquiFirst Corporation recorded mortgage attached to the petition, the petition also stated consistent with the attached recorded mortgage that MERS was the nominee of EquiFirst Corporation and was designated as mortgagee on the EquiFirst Corporation mortgage. The petition then stated that subsequent to the execution of the mortgage, MERS assigned its right to the mortgage to U.S. Bank by virtue of an assignment.
The attached assignment — a November 10, 2009 affidavit — was executed by *9 MERS, as nominee for EquiFirst Corporation. Through the affidavit, MERS assigned its rights to the Bering mortgage dated September 29, 2006 executed by Ms. Bering and recorded in the records of St. John the Baptist Parish to U.S. Bank.
1 fiThus, there was ample evidence to prove that U.S. Bank was the party entitled to enforce that instrument.
Accordingly, for the reasons stated, we affirm our original opinion.
/s/-
Chief Judge Marion F. Edwards
/a/_
Judge Fredericka Homberg Wicker
CHEHARDY, J., dissents from the grant of rehearing.

.On June 9, 2009, Abril B. Sutherland, Notary Public, filed an Act of Correction pursuant to La. R.S. 35:2.1, to remedy a clerical error in the legal description of the property in both the Act of Cash Sale and the EquiFirst Mortgage that incorrectly listed Lot 8 as Lot 8A. Exh. D to Order and Rule to Show Cause, filed November 10, 2009 by U.S. Bank.

. An allonge is ''[a] piece of paper annexed to a ... promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof. U.C.C. § 3-202(2).” Black's Law Dictionary 70 (5th ed. 1979).

. MERS is an acronym for Mortgage Electronic Registration Systems.

. La. C.C.P. art. 2592(7) states, "Summary proceedings may be used for trial or disposition of the following matters only: ... (7) The determination of the rank of mortgages, liens, and privileges on property sold judicially, and of the order of distribution of the proceeds thereof.”

. A second written judgment, exactly the same as the first, was signed on January 20, 2010. Nothing in the records indicates why the duplicate judgment was made.

. We further find that appellee's reliance on the case of Bankers Trust Louisiana v. Smith, 629 So.2d 525, 529 (La.App. 5 Cir.1993), writ denied, 634 So.2d 393 (La.1994) is misplaced. In Bankers Trust Louisiana, the court held that the underlying debt was a prerequisite to recognizing the existence and validity of the mortgage because the mortgage was an accessory obligation to the underlying debt. And, the mortgage did not exist unless the debt existed. Id. Bankers Trust Louisiana, unlike the present case, however, concerned a suit for a deficiency judgment where the court recognized that in a suit for deficiency judgment, the creditor must plead and prove the existence of the obligation giving rise to the debt. Id. at 527.