CLARK, Justice.
|,The issue presented in this matter arose in connection with a motion to rank creditors in a suit for executory process. The district court held a notarial act which cancelled a mortgage could be corrected by an act of correction under La. R.S. 35:2.1 and the lender which erroneously cancelled the mortgage maintained its rank relative to a subsequent mortgage under the statute’s provisions. The court of appeal disagreed, holding under these facts the subsequent mortgage primed the mortgage by the first lender, which must be ranked as of the time of the act of correction. After review, we hold the court of appeal erred and reverse, reinstating the ruling of the district court.
BACKGROUND INFORMATION [1]
DDS Construction, LLC (“DDS”), developed the Homewood Place subdivision in Reserve, Louisiana. To fund that development, DDS obtained various loans from First National Bank, USA (“First. National”). To secure its repayment of those loans, DDS granted First National a Multiple Indebtedness Mortgage over individual lots , located in the Homewood Place subdivision. One such lot is the property at issue in this matter, Lot 8, Square A, which also has a residential address of 131 Homewood Place, in Reserve, Louisiana.
| .FACTS AND PROCEDURAL HISTORY[2]
On January 6, 2006, DDS granted a Multiple Indebtedness Mortgage to First National as security for several of its loans (“Construction Mortgage”). This Construction Mortgage originally encumbered Lots 1, 2, 5, 6, 7, 8, 9, 11 and 13, Square A, Homewood Place, in Reserve, Louisiana. The Construction. Mortgage was filed in the mortgage and conveyance records of St. John the Baptist Parish on January 10, 2006. In executing the Construction Mortgage, DDS was represented by one of its members, Shondrell P. Campbell (“Campbell”), acting under a specific Certification of Authority to Act for the company.[3]
Lena Bering (“Bering”) bought 131 Homewood Place from DDS on September 29, 2006. In the Act of Cash Sale, the property was described as Lot 8A, Square A. That same day, and in connection with the sale, Bering executed a promissory note (“Bering note”) in favor of her lender, EquiFirst Corporation (“EquiFirst”) and granted to EquiFirst a mortgage over the property (“Bering Mortgage”). In the Bering Mortgage, the property was also *947 described as Lot 8A, Square A. Although EquiFirst was identified as the lender in the Bering Mortgage, Mortgage Electronic Registration Systems, Inc. (“MERS”) was designated as the nominee of EquiFirst and the mortgagee.[4] Both the Act of Cash Sale and the Bering Mortgage were filed in the mortgage and conveyance records of St. John the Baptist Parish on October 17, 2006.
Although the proceeds from DDS’s sale of the property to Bering should |shave been used to pay off the Construction Mortgage, both parties agree DDS misappropriated the funds. As a result, the property was not released from the Construction Mortgage at the time of its sale to Bering.
DDS began defaulting on the various promissory notes secured by the Construction Mortgage. First National contends Campbell, on behalf of DDS, met with bank officials on February 27, 2008. At that time, she informed the bank DDS sold one of the lots First National held as collateral, without obtaining a release of the bank’s mortgage. First National undertook an investigation of the matter and learned of the Act of Cash Sale by DDS to Bering and the Bering Mortgage, both of which identified the property at issue as “Lot 8A.”
Based on the information received from Campbell and an examination of the mortgage and conveyance records of St. John the Baptist Parish, First National determined the notary who passed both the Bering sale and the Bering Mortgage was Abril B. Sutherland (“Sutherland”), an attorney and notary with Louisiana Property and Title Company, L.L.C. First National’s attorney sent a letter to Sutherland, dated March 6, 2008, advising her the bank had a Construction Mortgage on Lot 8, Square A, Homewood Place, and to the extent that the transactions over which she officiated were meant to effect Lot 8, rather than Lot 8A (which did not exist), the bank’s mortgage had not been discharged.
On March 13, 2008, First National received a fax communication from Louisiana Property and Title Company, L.L.C., Sutherland’s company, requesting a loan payoff amount for Lot 8.[5] First National responded the same day with another letter addressed to Sutherland, indicating the bank would accept a certain sum as the payoff amount for Lot 8, if paid within 10 days. If the requested sum was not paid in that amount within that time frame, First National reserved the |4right to require that all of the indebtedness, or a larger portion of that indebtedness, secured by the Construction Mortgage, be paid before the property would be released. The bank made clear in its letter the only property that would be released from any mortgage under these terms was Lot 8. First National received no reply to this communication.
When the DDS loans continued in default, First National chose to accelerate all of its debt, and, on April 29, 2008, filed a petition for executory process in St. John the Baptist Parish.[6] In connection with *948 the Construction Mortgage at issue, the bank sought to foreclose on Lots 1 and 8. The district court signed the order of exec-utory process on April 29, 2008.
Thereafter, DDS made certain payments on the notes sued upon and First National agreed to voluntarily release certain property from the Construction Mortgage. On February 9, 2009, First National filed a supplemental petition for executory process, informing the court of the payments made by DDS and the partial releases agreed upon. Based on the payments made, First National agreed to release Lot 1 from the Construction Mortgage, but not Lot 8, which remained encumbered.[7] The district court ordered the executory process to issue as prayed for in the supplemental petition on February 10, 2009.
Having heard nothing from Sutherland, First National sought to apprise the holder of the Bering Mortgage of the pending foreclosure.[8] After investigation, | ¿First National determined the servicer of the Bering Mortgage was HomEq Servicing, of Sacramento, California (“HomeEq”).[9] On April 27, 2009, counsel for First National faxed and mailed a letter to HomEq, advising it of the issues surrounding the property in question, the pending sheriffs sale, and the bank’s intention to proceed.
In connection with its voluntary agreement to release certain of the mortgaged properties from the multiple indebtedness mortgages based on partial payment, First National executed on May 13, 2009, a Request for Cancellation by Licensed Financial Institution (“Request for Cancellation”). This request instructed and requested the Recorder of Mortgages of St. John the Baptist Parish to cancel from her mortgage records the Construction Mortgage dated January 6, 2006, to the extent that it encumbered “Lots 1, 2, 5, 6, 7, 8, 9, 11 and 13, Square A, Homewood Place.” (Emphasis added). According to First National, the inclusion of Lot 8 in the listing of residential lots was error. The Request for Cancellation was executed by Prentiss S. Wilks (“Wilks”), vice-president of First National, on behalf of the bank, before Brandt J. Dufrene, Jr. (“Dufrene”), notary public. The Request for Cancellation of the Construction Mortgage by First National was recorded in the mortgage and conveyance records of the parish on June 10, 2009.[10]
*949 On June 3, 2009, Sutherland, the notary for the sale of the property by DDS to Bering, executed an Act of Correction (“Sutherland Act of Correction”), indicating an error occurred in the description of the property in both the Bering note and the Bering | ^Mortgage when the property was described as “Lot 8A,” instead of Lot 8. The Sutherland Act of Correction was filed in the mortgage and conveyance records of St. John the Baptist Parish on June 5, 2009.
On June 15, 2009, First National recorded an Act of Correction executed by it through its vice-president, Wilks, and notarized by Dufrene, which sought to amend the Request for Cancellation filed five days earlier (“First National Act of Correction”). First National’s Act of Correction stated the release of the Construction Mortgage as to Lot 8 was in error when, in fact, the mortgage remained in full force and effect as to Lot 8.
Copies of email communications show HomEq, the servicer of the Bering Mortgage, received the information sent to it by First National. A HomEq employee forwarded to its title insurance company a copy of the supplemental petition for exec-utory process on June 19, 2009, which had been sent to her by First National’s counsel. Counsel for HomEq contacted First National’s attorney by email on August 25, 2009, indicating his law firm was evaluating the matter. HomEq’s counsel asked for a payoff amount to release Lot 8 and a copy of the petition for executory process.
Recognizing there may be problems with the statutory compliance of the First National Act of Correction, a second act of correction to the Request for Cancellation was made. On October 28, 2009, Dufrene, the notary before whom the original Request for Cancellation by First National was passed, executed an Act of Correction, which was filed on October 29, 2009 in the mortgage and conveyance records of St. John the Baptist Parish (“Dufrene Act of Correction”). In the Dufrene Act of Correction, the notary stated that Lot 8 should not have been included among the several lots requested for release from the Construction Mortgage. The Dufrene Act of Correction was intended to be supplementary to, and in addition to, the First National Act of Correction executed on June 15, 2009,17which made the same correction.
Meanwhile, also on October 28, 2009, U.S. Bank National Association (“US Bank”) was made the payee on the Bering note, pursuant to an allonge to the note.[11] On November 10, 2009, MERS, as nominee for EquiFirst and mortgagee of the Bering Mortgage, assigned the Bering Mortgage to U.S. Bank. The allonge and the mortgage assignment were filed into the mortgage and conveyance records of St. John the Baptist Parish oh November 10, 2009.
That same day, November 10, 2009, U.S. Bank filed a Petition for Intervention and Ranking of Creditors in the executory process instituted by First National.[12] In its *950 intervention, U.S. Bank claimed First National cancelled its Construction Mortgage encumbering Lot 8 on June 10, 2009 and improperly attempted to reinstate the can-celled mortgage through the First National Act of Correction filed on June 15, 2009. US Bank claimed the First National Act of Correction did not reinstate the cancelled Construction Mortgage and has no effect under Louisiana law.[13] Consequently, US Bank claimed the Bering mortgage was the superior mortgage encumbering Lot 8 and, as a result, US Bank was entitled to first payment of any proceeds from any judicial sale of the property.
The district court set a hearing on the motion to rank creditors on the morning of November 18, 2009. The sheriffs sale for the property was set for later in the morning. At the hearing, no testimony was presented; the parties relied |8on documents attached to the pleadings and mem-oranda as support for their arguments.
Both parties relied on the provisions of La. R.S. 35:2.1. US Bank relied on the statute for its authority to assert a security interest in the property. US Bank claimed that under the statute’s provisions, the Sutherland Act of Correction amended the Bering Mortgage and the Act of Cash Sale, to properly set forth that the actual lot transferred and mortgaged was Lot 8, instead of Lot 8A. First National relied on the statute to amend its Request for Cancellation of the Construction Mortgage, to delete the reference to Lot 8 from the listing of the residential lots for which the Construction Mortgage should be can-celled.
After hearing argument, the district court ruled from the bench, granting judgment in favor of First National, and against the intervenor, US Bank, denying the motion to rank creditors, with prejudice and at its cost. The district judge gave the following oral reasons for judgment:
The court finds that R.S. 85:2.1, regarding a notarial act, which the act of correction is a notarial act, which affects movable or immovable property, does not in any way except, E-X-C-E-P-T, acts of corrections regarding cancellations of mortgage.
Further, there’s been no showing that US Bank relied on this error and there’s been no prejudice shown during the five days before the act of correction was passed. R., p. 260.
The district court then directed the sheriffs sale, set for later that morning, to proceed and for all proceeds from the judicial sale of Lot 8 to be placed into the registry of the court pending a final judgment on appeal. A written judgment incorporating the district court’s ruling was signed on January 12, 2010. On January 25, 2010, the district court ordered the judgment to be designated as final and appealable.
In its appeal, US Bank argued First National’s cancellation of the Construction Mortgage with regard to Lot 8 was a substantive error. Thus, US Bank asserted La. R.S. 35:2.1 was not applicable in this fact situation, as the statute ^applies only to clerical errors. Additionally, US Bank argued the statute could not be used to retroactively reestablish the recordation of a cancelled mortgage. Further, US Bank contended the statute could only be applied to documents executed by two or more parties. First National disagreed, arguing the language of the statute did not place the limitations urged by US Bank on *951 an act of correction. First National also took issue with the documentary evidence, or lack thereof, produced by US Bank to support its authority to assert a security interest in the property.
The Louisiana Fifth Circuit Court of Appeal agreed with U.S. Bank’s characterization of the erroneous inclusion of Lot 8 in First National’s request for cancellation of the Construction Mortgage as a substantive error. First National Bank, USA v. DDS Construction, LLC, 2010-0204, p. 9 (La.App. 5 Cir. 11/9/10); 92 So.3d 1, 2010 WL 4486367. Finding First National made a substantive error, the court of appeal held the error could not be amended or corrected by a notarial act of correction. The analysis made by the court of appeal was brief:
Here, the Act of Correction attempted to revoke the cancellation of the mortgage as to Lot 8. An obligation that burdened Lot 8 had been removed, then was attempted to be restored. That is a substantive change, not a clerical error, and as such it could not be performed by a notarial act of correction. This limitation creates a safeguard against the improper alteration of recorded instruments. Id., 2010-0204, p. 9, 92 So.3d 1.
The court of appeal reversed the district court’s judgment in favor of First National. Instead, judgment was rendered in favor of US Bank, granting its motion to rank creditors and finding US Bank to have first priority over the proceeds of the November 18, 2009 judicial sale of Lot 8. In all other respects, the matter was remanded for further proceedings.
A limited rehearing was granted by the court of appeal, pursuant to La. C.C.P. art. 2133(B), to consider First National’s alternative ground for upholding | inthe district court’s judgment.[14] First National contended US Bank’s failure to produce the original Bering note at the hearing on the motion to rank was fatal to its claim of authority to assert a security interest in the matter. First National also contended the original Bering note was necessary to prove the amount due under the note.
The court of appeal disagreed, finding the amount due under the note was not pertinent to a hearing where the purpose was to rank creditors rather than to establish the amount of the debt owed. The appellate court also found the record showed neither party had an objection to the documents attached to the pleadings, with the exception of First National’s objection regarding the original Bering note. In ruling on this objection, the court of appeal referred to the record, which showed the district court allowed a substitution of the original document. Thus, the appellate court found the record contained ample evidence to prove US Bank was the party entitled to enforce that instrument. After consideration of First National’s alternative argument, the court of appeal maintained its original opinion. Id., 2010-0204, p. 4, 91 So.3d 944 (on rehearing).
We granted First National’s writ to review the correctness of the court of appeal’s ruling. First National Bank, USA v. DDS Construction, LLC, 2011-1418 (La.10/12/11); 74 So.3d 213.
LAW AND ANALYSIS

Applicable Law

The issue in this case involves the applicability and interpretation of La. *952 R.S. 35:2.1. Thus, the case presents us with a question of law which is reviewed by this court under a de novo standard of review. Broussard v. Hilcorp Energy Co., 2009-0449, p. 3 (La.10/20/09); 24 So.3d 813, 815-816; Louisiana Municipal Association v. State, 2004-0227, p. 35 (La.1/19/05); 893 So.2d 809, 836. We will render judgment after our review of the record, giving no deference to the legal conclusions made by the courts below, because this court is the ultimate arbiter of the meaning of the laws of this state. Broussard, 2009-0449, p. 3; 24 So.3d at 816; Cleco Evangeline, LLC v. Louisiana Tax Com’n, 2001-2162, p. 3 (La.4/3/02); 813 So.2d 351, 353.
La. R.S. 35:2.1 provides:
§ 2.1. Affidavit of corrections
A.A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.
D. This Section shall be in addition to other laws governing executory process.
None of the state appellate decisions which have referenced La. R.S. 35:2.1 have considered the precise issue presented here, i.e. where an act of correction was used in connection with the cancellation of a document from the public records.[15] *953 Our analysis of the meaning of the statute will proceed under the | ^following rules of statutory interpretation.
Legislation is the solemn expression of the will of the legislature. La. C.C. art. 2; Louisiana Municipal Association, 2004-0227, p. 35; 893 So.2d at 836. The determination of the legislature’s will regarding legislation must start with the language of the statute itself. McGlothlin v. Christus St. Patrick Hosp., 2010-2775, p. 11 (La.7/1/11); 65 So.3d 1218, 1227. The words used must be interpreted as they are generally understood. La. C.C. art. 11; McGlothlin, 2010-2775, p. 11; 65 So.3d at 1228. When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature’s intent. La. C.C. art. 9; La. R.S. 1:4; In re: Succession of Faget, 2010-0188, p. 8-9 (La.11/30/10); 53 So.3d 414, 420. Accordingly, we are bound to a strict interpretation of the plain language of the statutory provisions to which we now turn.
First National contends its Request for Cancellation, being a notarial act affecting immovable property, may be corrected by an act of correction under the plain terms of the statute. Understanding the words of the statute as they are commonly interpreted, First National argues an act of correction must be given 11sretroactive effect to the date of the recordation of the original notarial act, as long as such an effect does not prejudice rights acquired by any third person where the third person reasonably relied on the erroneous notarial act. Thus, First National argues that the First National Act of Correction (and the supplemental Dufrene Act of Correction) amends its Request for Cancellation to delete reference to Lot 8, with the effect of this deletion given from the date of the recordation of the Request for Cancellation. Under this circumstance, the Construction Mortgage was never can-celled from Lot 8, and the Construction Mortgage primes any subsequent mortgage on the property. First National contends US Bank was not prejudiced by the amendment of the Request for Cancellation, as US Bank took no action in reliance on the erroneous cancellation of the Construction Mortgage on Lot 8 between the time the erroneous Request for Cancellation and the First National Act of Correction were filed. First National asserts there was never an intention to lift the Construction Mortgage from Lot 8.
US Bank contends the retroactive provisions of La. R.S. 35:2.1 do not apply here. According to US Bank, First National’s Request for Cancellation cancelled the Construction Mortgage from the public records, which included Lot 8. Once removed from the public records, the Construction Mortgage could not be reinstated under the provisions of La. R.S. 35:2.1. US Bank argues a mortgage may only be reinstated by a court. US Bank contends the statute applies only to correct clerical errors in continuously recorded documents and analogizes the present situation to the reinscription of a lapsed mortgage. US Bank argues the Construction Mortgage, if effective at all, must be considered filed in the public records and affecting third parties from the time the Dufrene Act of Correction was filed, as the First National Act of Correction does not comply with the statute. Under US Bank’s interpretation of the statute, the Bering Mortgage, now *954 held by US Bank, primes the Construction Mortgage of First National.
| Applicability of Statute
Although US Bank asserts the statute may not be used to correct notarial acts which have canceled a document from the public records, we find the statute itself does not impose such a limitation, nor are we at liberty to impose such in the absence of legislative directive. The well-settled rules of statutory construction in this regard were succinctly set forth in M.J. Farms, Ltd. v. Exxon Mobil Corip., 2007-2371, p. 13-14 (La.7/1/08); 998 So.2d 16, 27:
It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. [State v.] Johnson, [2003-2993 (La. 10/19/04);] 884 So.2d [568] at 576; State v. Campbell, 03-3035 (La.7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. Johnson, 884 So.2d at 576-77; Campbell, 877 So.2d at 117. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ. Code art. 13; City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548, 986 So.2d 1 (La.10/1/07).
The subject matter of the statute is the correction of notarial acts, including those regarding immovable property. We assume the legislature is aware that notarial acts are used and often required when dealing with immovable property, including mortgages affecting immovable property. La. C.C. art. 3366 provides that the recorder of mortgages shall cancel the re-cordation of a mortgage upon written request for cancellation in a form prescribed by law. The record in this case shows the Request for Cancellation was executed by First National pursuant to La. R.S. 44:109 B, now La. R.S. 9:5172, which requires an authentic act by a financial institution to be attached to a request to cancel a mortgage.[16] Presuming the legislature was aware that notarial acts are often used in connection with 11Bimmovable property, including the cancellation of a mortgage on that property, and that these documents are often recorded in the public records, we reject a limitation on La. R.S. 35:2.1 which would result in the inapplicability of the statute here.
While we find the statute to be clear and unambiguous and acknowledge the inquiry ceases there, consideration of the legislative history further supports our holding. See Faget, 2010-0188, p. 9; 53 So.3d at 420. As originally enacted in 1984, the legislature limited the scope of an act of correction to the reconciliation or correction of an obvious discrepancy or error only in the description of immovable property.[17] A 1987 amendment resulted in the *955 statute’s present form and provisions, with a 1995 amendment refining and expanding the persons who could execute an act of correction.[18] We find the limitation originally placed on the statute was eliminated through amendment, clearly signaling the legislature’s intent to broaden the applicability of La. R.S. 35:2.1.

Interpretation of the Statute

We turn now to the application of the provisions of the statute. Both in brief and in oral argument to this court, US Bank concedes the Dufrene Act of Correction in this case “can likely be said to have corrected a clerical error,” as the inadvertent inclusion of a lot number among many other numbers may be | ^considered a clerical error.[19] We agree. Black’s Law Dictionary defines a “clerical error” as “[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.” Black’s Law Dictionary 622 (9th ed.2009). We hold that including, or failing to include, a number in a series of numbers is just one of the almost limitless examples of clerical errors.
Considering the language of the statute, we find the mistake at issue herein was made in the type of document contemplated. We note that a notarial act is also known as an authentic act. An “authentic act” is defined under Louisiana law as “a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed.” La. C.C. art. 1833. We find the Request for Cancellation filed by First National in this case was a notarial act. The act was signed by a representative of the bank in the presence of a notary and two witnesses, who each signed the document. We also find the Request for Cancellation was the type of notarial act to which the statute applies, as a request to cancel a mortgage is undoubtedly an act “affecting immovable property.”
The statute describes the mechanism by which the act of correction must be executed. La. R.S. 35:2.1(A) provides the correction of a notarial act may be accomplished “... by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error.” The act of correction must itself be an authentic act, executed by the notary before two witnesses and another notary public. Id. Once an act of correction is executed in compliance with Section (A), the act of correction shall be given retroactive effect to the date of recordation of the original, 117error-containing act. La. R.S. 35:2.1.
Keeping these requirements in mind, we find the First National Act of Correction executed through its vice-president on June 15, 2009 and recorded that same day, did not comply with the requirements of the statute, although it was an authentic act. Instead of an act of corree- *956 tión executed by the notary before whom the error-containing notarial act was made, as required by La. R.S. 35:2.1(A), the First National Act of Correction was executed by the original party who executed the erroneous Request for Cancellation. Although the First National Act of Correction was executed before the same notary and witnesses as the original, error-containing notarial act, that circumstance is not a requirement of the statute. As such, the First National Act of Correction cannot be afforded retroactive effect to the date of recordation of the original Request for Cancellation.
However, the Dufrene Act of Correction executed on October 28, 2009, and recorded on October 29, 2009, complied with the statute’s requirements. Dufrene was the notary before whom the Request for Cancellation was passed. The Dufrene Act of Correction was executed before two witnesses and another notary public, and declared that the Request for Cancellation contained the clerical error of including Lot 8 in the listing of residential lots over which the Construction Mortgage was to be cancelled when, in truth and in fact, the Construction Mortgage remained in full force and effect as to Lot 8. Consequently, under the plain terms of the statute, the Dufrene Act of Correction must be given retroactive effect to the date of re-cordation of the Request for Cancellation, June 10, 2009, unless there is prejudice to a third party who reasonably relied on the original act, or if it is found the correction alters the true agreement and intent of the parties. La. R.S. 35:2.1(B).
We find no temporal limitation in the statute. Thus, the fact that the Du-frene Act of Correction was filed four months after the original, error-containing 11RRequest for Cancellation does not, in and of itself, affect our consideration. However, we note the common sense observation that the longer the time period is between the filing of the original, erroneous notarial act and its act of correction, the greater the potential that a third person will acquire rights through reasonable reliance on the original act.
US Bank has maintained in this court that it does not rely on the prejudice prong of the statute for relief. The record supports the finding that US Bank was not, in fact, prejudiced as contemplated by the statute because US Bank did not reasonably rely on the original, error-containing Request for Cancellation, or acquire rights before the Dufrene Act of Correction was recorded. The record shows the Sutherland Act of Correction was filed on June 5, 2009, altering the Bering Mortgage to reflect the proper description of the property encumbered as Lot 8, rather than Lot 8A. The Sutherland Act of Correction complied with the requirements of La. R.S. 35:2.1, making the correction retroactive to the filing of the Bering Mortgage on October 17, 2006. On June 5, 2009, we find the Construction Mortgage primed the Bering Mortgage on Lot 8. The rights in the property of the holders of the Bering Mortgage, now held by US Bank, were established before the Request for Cancellation was filed by First National on June 10, 2009.
Between June 10, 2009, when the Request for Cancellation was filed, and October 29, 2009, when the Dufrene Act of Correction was filed, the holders of the Bering Mortgage took no action with regard to Lot 8 in reliance on the requested cancellation of the Construction Mortgage, other than assigning the mortgage to US Bank. There were no intervening alien-ations or encumbrances placed on the property. In fact, the holders of the Bering Mortgage took no action until US Bank filed the intervention in the present *957 suit for executory process and the motion to rank.
|laBy operation of the clear terms of the statute, the Dufrene Act of Correction must be given retroactive effect to the filing date of the original notarial act which it corrects; June 10, 2009 was the date on which the Request for Cancellation was filed. The effect of making the correction to the Request for Cancellation retroactive deletes the reference to Lot 8 as though it was never there; the Construction Mortgage was never cancelled from Lot 8 and the Construction Mortgage continued to prime the Bering Mortgage. We find the holders of the Bering Mortgage, now US Bank, suffered no prejudice as contemplated by the statute as a result of the filing of the Dufrene Act of Correction.
For these reasons, we reject U.S. Bank’s arguments regarding the reinstatement, or reinscription, of a mortgage. The case cited by US Bank for the proposition that a mortgage may only be reinstated by a court pre-dates the enactment and amendment of La. R.S. 35:2.1 in its present form.[20] But the real distinction is that the present facts do not constitute the reinstatement of a mortgage. Here, by operation of the statute, the mortgage was never cancelled as to Lot 8, so there is no mortgage that would need to be reinstated. Similarly, we are not presented with a situation where the holder of a mortgage has failed to reinscribe the mortgage as provided by law.[21] Because the mortgage was never cancelled, there is nothing to reinscribe. Although a mortgage holder’s failure to reinscribe the mortgage as required by law may be the result of error or inadvertence, we find nothing inconsistent with the legislature treating this type of error differently than a clerical error, as in the present case.
The statute also requires the act of correction shall not alter the true agreement and intent of the parties. La. R.S. 35:2.1(B). The record in this case affirmatively shows First National never intended to cancel the Construction 120Mortgage encumbering Lot 8. The holders of the Bering Mortgage were advised of the existence of the Construction Mortgage- in 2008, through First National’s letters to Sutherland, the closing notary to the sale between DDS and Bering. Due to her erroneous property description in the Act of Cash Sale, the Bering note and the Bering Mortgage, the holders of the Bering Mortgage would have remained unaware that the Construction Mortgage primed their own, as even a search of the public records would have failed to uncover the first mortgage. We believe Sutherland’s Act of Correction, which amended the property description in the Bering Mortgage, was executed in response to the information about the Construction Mortgage sent by First National.
In addition, First National sent copies of the petition and supplemental petition for executory process, filed in 2008 and 2009, respectively, to HomEq, at one time the servicer of the Bering Mortgage.[22] The Supplemental Petition for Executory Process specifically stated the Construction Mortgage was to be cancelled as to Lot 1 of the Construction Mortgage, but that the Construction Mortgage remained in effect as far as it encumbered Lot 8. Although the First National Act of Correction, filed June 15, 2009 was not in compliance with La. R.S. 35:2.1, such that the correction could be given retroactive effect, the recor- *958 dation nevertheless serves as evidence of First National’s intentions.
Our review of the record shows the Du-frene Act of Correction did not alter the true intent of the Request for Cancellation by First National, which was always to cancel the mortgage insofar as it encumbered all of the other residential lots, but to maintain the Construction Mortgage in place with regard to Lot 8.
Having found the provisions of La. R.S. 35:2.1 applicable to the present matter, and that its application results in a reinstatement of the district court’s ruling in favor of First National on the motion to rank creditors, we find it | ^unnecessary to address First National’s alternative arguments in support of the district court judgment.
DECREE
For the foregoing reasons, we reverse the ruling of the court of appeal, reinstating the judgment of the district court on the motion to rank creditors. We hold the Construction Mortgage of First National primes the Bering Mortgage held by US Bank. This matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
KIMBALL, Chief Justice, dissents for reasons assigned by Justice KNOLL.
JOHNSON, Justice, dissents for reasons assigned by Justice KNOLL.
KNOLL, Justice, dissents and assigns reasons.

. The record of this executory process contains no testimony. However, the parties have included this information in their statement of the case, to which no objection has been lodged. The information is provided in order to place the documentary evidence in a readily understandable context.

. The facts have been adduced through the parties' argument, pleadings, memoranda and attached documents. At the hearing held on this matter, the parties agreed there was no dispute as to the documents presented by either side, with the exception of First National's objection to the lack of the original note evidencing the intervenor's security interest, discussed infra.

.Additional multiple indebtedness mortgages were granted by DDS to First National over other property located in St. John the Baptist Parish and in St. James Parish.

. As will be further explained, the Bering Mortgage was subsequently assigned to U.S. Bank National Association, the intervenor in the executory process which forms the framework for this matter.

. The communication indicated the firm had been retained by the buyer of the property to conduct the closing which occurred on September 29, 2006, the date on which DDS sold Bering Lot "8A." R., p. 203.

.Included in this petition for executory process were allegations with regard to the other multiple indebtedness mortgage granted by DDS over other property in St. John the Baptist Parish. A separate petition for executory process was filed in St. James Parish for the mortgaged property located there.

. Based on payments made, First National released all of the property encumbered by the other mortgage in St. John the Baptist Parish and some of the properties under separate petition for executory process in St. James Parish.

. Although not a part of this record, First National contends formal Mennonite notices were provided to both Bering and her lender in connection with these proceedings. A "Mennonite notice” is so named after the Supreme Court's decision in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Relying on Mennonite, supra, this court has held "[o]ne with a legally protected property interest ... is entitled to notice of the property's pending sale. ‘Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, ... if its name and address are reasonably ascertainable.’ ” Magee v. Amiss, 502 So.2d 568, 571 (La. 1987), citing Mennonite, 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188.

. The April 27, 2009 letter from First National spelled the name of the loan servicer as "Ho-meEq.” However, subsequent documents purportedly originating with that company show the spelling of the name as "HomEq.” Compare R., p. 206 with R., p. 180 and 210.

. The record shows on June 4, 2009, Winters Title Agency, Inc., presumably the company which handled the sales of the DDS properties, executed a request for cancellation of the mortgages on those properties which were to be released.

. An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorse-ments.” Black's Law Dictionary 88 (9th ed.2009). The allonge to the Bering note reflects that Barclays Capital Real Estate, Inc., d/b/a HomEq Servicing, as attorney in fact for EquiFirst Corporation, executed an Allonge to Note in favor of U.S. Bank, referencing the Bering note. US Bank’s complete designation on the allonge is as “U.S. Bank National Association, as Trustee under Secu-ritization Servicing Agreement Dated as of February 1, 2007 Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC2.” R., p. 180.

. A separate Motion to Rank Creditors was filed by US Bank in connection with its intervention.

. Under US Bank’s interpretation, this argument applies equally to the Dufrene Act of Correction.

. La. C.C.P. art. 2133(B) provides: "A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.”

. In each of these cases, an act of correction was used to correct property descriptions, the names of property owners, or other language in notarial acts. See Property Asset Management, Inc. v. Pirogue Cove Apartments, 1997-0212, p. 7 (La.App. 4 Cir. 4/11/97); 693 So.2d 1217, 1221 (party allowed right to amend petition to enforce defaulted in rem mortgage to incorporate act of correction which corrected omission of the word "to” before the verb "subject” in the mortgage); Hibernia National Bank v. Belleville Historic Development, L.L.C., 2001-0657, p. 8 (La.App. 4 Cir. 3/27/02); 815 So.2d 301, 306, writ denied, 2002-1177 (La.6/14/02); 818 So.2d 785 (error in municipal address irrelevant where there was correct legal property description); HP. 10 Profit Sharing Plan v. Mayeux, 2003-0691, p. 7 (La.App. 1 Cir. 9/17/04); 893 So.2d 887, 891, writ denied, 2005-0868 (La.5/13/05); 902 So.2d 1031 (legal description of property amended and corrected in act of sale); Funk v. Clement, 2005-0966, p. 5 (La.App. 3 Cir. 3/15/06); 925 So.2d 717, 720-721 (attempt to include property in trust document void because act of correction failed to comply with requirements of statute); City of Harahan v. State, 2008-0106, p. 8-9 (La.App. 5 Cir. 5/27/08); 986 So.2d 755, 760 (attempt to remove reversionary language in Act of Transfer of property without effect where failure to comply with statutory terms and contrary to true intent of parties); and Vickers v. Vickers, 2009-0280, p. 5-6 (La.App. 3 Cir. 11/18/09); 25 So.3d 210, 213 (under circumstances presented, deliberate and repetitive misidentification of property owner was a substantive error and statute not applicable). Federal cases referencing the statute have not addressed the issue presented here. See In re Huber Oil of Louisiana, Inc., 311 B.R. 440, 444 (W.D.La. 2004) (cash sale deed omitted property intended to be included in transfer, effect given to act of correction); and KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC, 823 *953 F.Supp.2d 399, p. 5 n. 3 (M.D.La.2011) (clerical error which referenced incorrect mortgage on note did not affect validity of mortgage which expressly secured payment of all obligations owing pursuant to any note).

. Pursuant to Acts 2010, No. 284, eff. January 1, 2011, former La. R.S. 44:109, pertaining to cancellation of mortgages by licensed financial institutions, was redesignated as La. R.S. 9:5172.

. As originally enacted, La. R.S. 35:2.1 stated:
§ 2.1. Affidavit of correction; immov-ables
If a notary public executes a notarial act involving immovable property in which the property description contained in the act refers to any prior notarial act executed by the same notary involving a property de *955 scription of the same immovable, the notary public may file an affidavit of correction to reconcile or correct any obvious discrepancy or error in the two notarial acts only as to the description of the immovable property-
The affidavit of correction shall be executed before another notary public and two witnesses.
Acts 1984, No. 245, § 2.

. See Acts 1987, No. 407, § 1 and Acts 1995, No. 216, § 1.

. Brief on Behalf of Plaintiff-in-Intervention/Respondent, US Bank, p. 6.

. See Carrere v. Reddix, 211 La. 566, 30 So.2d 432 (1947).

. See La. C.C. arts. 3357, 3362-3365.

.We note counsel for HomEq is present counsel for US Bank.