STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0564

LOUISIANA WETLANDS, LLC,
AND NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION,
CHEVRON USA, INC.,
SOUTHERN NATURAL GAS COMPANY, LLC,
EP ENERGY E&P COMPANY, LP,
AND BRAMMER ENGINEERING, INC.

Judgment Rendered: **DEC 1 1 2024**

* * * * *

On Appeal from the
16th Judicial District Court
Parish of St. Mary, State of Louisiana
Trial Court No. 130527

The Honorable Suzanne deMahy, Judge Presiding

* * * * *

James R. Swanson
H.S. Bartlett, III
Lance C. McCardle
E. Blair Schilling
New Orleans, Louisiana

Gladstone N. Jones, III
Bernard E. Boudreaux
Kevin E. Huddell
Michael P. Arata
John T. Arnold
Rosa E. Acheson
Alayne Gobielle
Harvey S. Bartlett, III
New Orleans, Louisiana

Attorneys for Plaintiff-Appellant,
James J. Bailey, III, Individually and as
Representative of the Successions
of Willie Palfrey Foster and
Fairfax Foster Bailey

George Arceneaux, III
Jamie D. Rhymes
Court C. VanTassell
John S. Troutman
Randee V. Iles
Lafayette, Louisiana

Kelly Brechtel Becker
Mark R. Deethardt
Erin Bambrick
Trinity A. Morale
New Orleans, Louisiana

Michael P. Cash
Houston, Texas

Attorneys for Defendant-Appellee,
BP America Production Company

\* \* \* \* \*

BEFORE: WELCH, THERIOT, WOLFE, MILLER, AND STROMBERG, JJ.

**Opinion on Rehearing**

**STROMBERG, J., on rehearing.**

In this oil and gas contamination lawsuit,[1] plaintiff, James J. Bailey, III, individually and as the representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey, appeals a summary judgment granted in favor of one of the named defendants, BP America Production Company (BP America), and dismissing all of Mr. Bailey's claims against BP America with prejudice. BP America answered the appeal, seeking a clarification of the trial court's reasons for judgment. This court initially affirmed the trial court's judgment and denied the answer to the appeal. **Louisiana Wetlands, LLC v. Energen Resources Corp.**, 2023-0564 (La. App. 1 Cir. 4/19/24), 390 So.3d 378, 380. On June 21, 2024, this court granted a rehearing. For the following reasons, we reverse the judgment and remand to the trial court for further proceedings, and we deny the answer to appeal as moot.

## FACTS AND PROCEDURAL HISTORY

The original plaintiffs in this case were Louisiana Wetlands, LLC, and New 90, LLC. However, Louisiana Wetlands was later removed and James J. Bailey, III (Mr. Bailey) was added as a new party plaintiff, both individually and in his capacity as the representative of his mother's and grandmother's successions.[2] All claims of New 90, LLC were dismissed through summary judgment, leaving Mr. Bailey as the sole plaintiff in his individual and representative capacity for the Bailey family. See **Louisiana Wetlands, LLC v. Energen Resources Corp.**, 2021-0290 (La. App. 1 Cir. 10/4/21), 330 So.3d 674, 680, writ denied, 2021-01610 (La. 1/12/22), 330 So.3d 614 (**Louisiana Wetlands I**). In prior appeals, we have provided a detailed factual

---

[1] These types of cases are also known as "legacy" lawsuits because they often arise from oil and gas operations conducted many decades ago, leaving an unwanted legacy in the form of actual or alleged contamination. **Louisiana Wetlands, LLC v. Energen Resources Corp.**, 2021-0290 (La. App. 1 Cir. 10/4/21), 330 So.3d 674, 676 n.1, writ denied, 2021-01610 (La. 1/12/22), 330 So.3d 614 (**Louisiana Wetlands I**).

[2] A petition and two amending petitions were filed in this suit, with the original petition filed by Louisiana Wetlands, LLC, and New 90, LLC. The second amending petition removed Louisiana Wetlands, LLC, as a party plaintiff and added Mr. Bailey as a plaintiff. Throughout the opinion, we reference Mr. Bailey and sometimes the Bailey family to represent the plaintiff's position.

and procedural history of the underlying oil and gas activities and contamination issues on the Bailey family property. See **Louisiana Wetlands I**, 330 So.3d at 676-678; see also **Louisiana Wetlands, LLC v. Energen Resources Corp.**, 2022-1169 (La. App. 1 Cir. 11/30/23), 380 So.3d 38, 41-42, writ denied, 2024-00004 (La. 2/27/24), 379 So.3d 1265 (**Louisiana Wetlands II**). We repeat only the facts pertinent to the appeal currently before us, which will hereafter be referred to as **Louisiana Wetlands III**.

For over 100 years, the Bailey family has owned a 300-acre tract of land known as the Shady Retreat Plantation, near the Town of Franklin in St. Mary Parish. The property has been passed down through the Bailey family for generations. It is undisputed that oil and gas exploration and production activities were historically conducted on various areas of the Bailey property, pursuant to a 1948 mineral lease entered into between Mr. Bailey's family as lessors and Pan-American Production Company (Pan-American) as lessee. Pursuant to partial assignments beginning in 1952, three production companies, BP America, Chevron U.S.A., Inc., and Southern Natural Gas Company, L.L.C. (SNG), were each a successor to Pan-American's lessee interest in the 1948 lease. By 1973, all wells that were drilled and operated under the 1948 lease had been plugged and abandoned. In 1975, the Bailey family entered into two more leases for hydrocarbon production on their property. Energen Resources Corporation is the successor to the 1975 leases; however, all operations pursuant to the 1975 leases were terminated in July 2000, when the last two operating wells were plugged and abandoned.

This lawsuit was initially filed in December 2016 by the Bailey family, through their limited liability companies, asserting tort and contract claims against all of the oil and gas lessees who operated at various times throughout the property's

4

history of oil and gas production.[3] The Bailey family sought damages arising from the historical oil and gas exploration and production activities on their property, alleging environmental damage to their property, and additionally seeking to have their contaminated property cleaned and restored to its original condition.

Pertinent to this appeal, it is important to note that in August and September of 2020, SNG and Chevron filed limited admissions of liability under La. R.S. 30:29 more commonly known as "Act 312,"[4] with the trial court, each admitting to being a responsible party for some, but not all, of the environmental damage on the Bailey property. Chevron and SNG did not, however, admit to liability for any of the plaintiff's private claims. The trial court referred the matter to the Louisiana Department of Natural Resources, Office of Conservation (LDNR) for a determination of the most feasible plan (MFP) for remediation of the Bailey property to applicable regulatory standards.[5] After the MFP was adopted, LDNR submitted the MFP to the trial court, which was accepted and adopted by the trial court in a judgment dated July 15, 2022. SNG and Chevron submitted the funds necessary to implement the MFP into the registry of the trial court, and this court affirmed the trial court's judgment adopting the MFP. The Louisiana Supreme Court denied writs on February 27, 2024. **Louisiana Wetlands II**, 379 So.3d at 1265.

---

[3] A petition and two amending petitions were filed in this suit, with the initial petition naming Energen Resources Corp., Chevron U.S.A., Inc., SNG, and Brammer Engineering as defendants. The first amending petition was filed to amend a paragraph in the petition as to property descriptions and add exhibits concerning the same. The second amending petition added BP America as a defendant. Brammer Engineering, Inc. was later dismissed from the suit when the court signed an order granting its and Mr. Bailey's joint motion for dismissal with prejudice.

[4] Louisiana Revised Statutes 30:29, also referred to as Act 312, has a stated legislative purpose of ensuring that damage to the environment is remediated to a standard that protects the public interest. Because this case involves environmental damage arising from oil and gas activities, Act 312 applies.

[5] By 2023 La. Acts No. 150, § 5, effective January 10, 2024, La. R.S. 30:29 was amended and reenacted to rename LDNR to "Louisiana Department of Energy and Natural Resources, Office of Conservation." However, in this opinion, we will continue to use "LDNR" to refer to the department.

Meanwhile, on August 23, 2021, the trial court signed a judgment that, among other rulings, granted BP America's motion for partial summary judgment and dismissed Mr. Bailey's claims for punitive damages and for additional remediation required by an express contractual provision under La. R.S. 30:29(M)(1)(b).[6] The judgment also granted BP America's motion for partial summary judgment as to Mr. Bailey's claims "sounding in tort and continuing tort," including negligence claims under La. C.C. art. 2315, claims for punitive and exemplary damages under former La. C.C. art. 2315.3, trespass and nuisance claims, strict liability claims under former and current La. C.C. art. 667, and premises liability claims under La. C.C. arts. 2317 and 2322.

On July 29, 2022, BP America filed the summary judgment motion that is the subject of this appeal, seeking dismissal of Mr. Bailey's sole remaining claim against it for unreasonable and excessive operations based upon implied lease obligations under the 1948 lease. On August 29, 2022, the trial court heard the matter and issued reasons for judgment and signed a judgment, granting the summary judgment motion in favor of BP America.[7] On August 30, 2022, the trial court signed a "Final Judgment" in favor of BP dismissing with prejudice all claims and causes of action asserted by the Bailey family against BP America.[8] Now, Mr. Bailey appeals from

_____

[6] Pursuant to BP America's partial summary judgment motion, the trial court also dismissed with prejudice Mr. Bailey's claims against it for the following: civil fruits under La. C.C. art. 486, unjust enrichment, a breach of the mineral servitude under La. R.S. 31:22, stigma or diminution of property value, and premises liability under La. C.C. art. 2322.

[7] The motion for summary judgment at issue in this appeal was filed and decided under La. C.C.P. art. 966 before its amendment by 2023 La. Acts No. 317, § 1, and 2023 La. Acts No. 368, § 1, which became effective on August 1, 2023.

[8] Ordinarily, a subsequent judgment identical in substance to an earlier judgment is considered superfluous, unnecessary, and invalid. **Jeandron v. Cenac**, 2022-1158 (La. App. 1 Cir. 4/14/23), 365 So.3d 851, 855 n.2. Notably, however, the original August 29, 2022 judgment granted the motion for summary judgment and dismissed the claims against British Petroleum for unreasonable and excessive operations; however, it appeared to be a partial final judgment that was not designated as a final judgment after an express determination that there was no just reason for delay pursuant to La. C.C.P. art. 1915(B)(1). As such, the trial court properly signed the subsequent August 30, 2022 judgment wherein it referred to its prior August 29, 2022 judgment to correct this deficiency in the language of the judgment. See La. C.C.P. art. 1951; **Jeandron,**

the trial court's judgment dismissing BP America from his suit, and BP America filed an answer to this appeal, urging this court to affirm the trial court's judgment for a different reason.

## STANDARD OF REVIEW

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Louisiana Wetlands I**, 330 So.3d at 678; see also La. C.C.P. art. 966(A)(3).[9] On a motion for summary judgment, the initial burden of proof rests with the mover. See La. C.C.P. art. 966(D)(1); **Bayview Loan Servicing, LLC v. Holden**, 2023-1347 (La. App. 1 Cir. 6/7/24), 391 So.3d 751, 756, writ denied, 2024-01032 (La. 11/14/24), ___ So.3d ___. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material

---

365 So.3d at 855 n.2. While the November 10, 2022 order of appeal refers to the August 29, 2022 judgment, the Bailey family refers to both judgments in its appellant brief.

[9] BP America submitted the following in support of its summary judgment motion: the petition and amending petitions; the affidavit of Howard J. Held, a certified professional landman, with the 1948 mineral lease attached as an exhibit; the August 23, 2021 judgment granting BP America's prior motion for summary judgment; and pleadings and deposition excerpts related to the MFP. Mr. Bailey opposed the motion with excerpts and exhibits from the corporate deposition of Chevron; the affidavits and expert reports of two engineers; and the transcript of the April 9, 2014 legislative hearing on Senate Bill No. 667, which amended Act 312. See 2014 La. Acts No. 400, § 1.

fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); **Bayview Loan Servicing, LLC**, 391 So.3d at 756-57.

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Johnson v. Knight**, 2023-1267 (La. App. 1 Cir. 6/14/24), 391 So.3d 1126, 1129. This oilfield remediation case is governed by the substantive law found in Act 312, and the facts are not in dispute.

## LAW AND ANALYSIS

BP America, in its motion for summary judgment at issue in this appeal, argued that Mr. Bailey's remedies in excess of the MFP remediation must be premised under La. R.S. 30:29(M)(1)(c) for breach of the implied obligation under the lease not to operate unreasonably or excessively. It then contended that any claims against BP America for implied lease obligations should be dismissed because it was undisputed that neither BP America nor its predecessor, Pan-American, engaged in any physical operations of their own. BP America contended that an award of damages would be duplicative of the cost of funding and implementing the MFP, which would preclude any damages award under La. R.S. 30:29(M)(1)(c). According to BP America, Mr. Bailey was being made whole by receiving specific performance of any obligation owed to him for the evaluation or remediation of environmental damages to the property through the MFP, thereby extinguishing his claims against it for the breach of implied lease obligations. BP America also relied on **State v. Louisiana Land & Exploration Co.**, 2020-00685 (La. 6/30/21), 347 So.3d 684, 693 (**LL&E II**), to support its contention that Mr. Bailey could not recover remediation damages exceeding the costs of the MFP where there was no express contractual provision providing for such recovery.

However, the trial court did not address these issues in its reasons for its ruling on the summary judgment motion. Instead, in its reasons for judgment, the trial

8

court stated that it had previously found that BP America was dismissed from any additional tort claims. The trial court then stated that the claim raised in BP America's summary judgment motion concerned damage caused by unreasonable or excessive operations, which it also classified as a tort claim. The trial court concluded, "That claim would not be available to [Mr. Bailey] due to prior rulings made by this Court."[10]

On appeal, Mr. Bailey assigns error to the trial court's holding that his claims for breach of implied obligations contained in the 1948 lease are tort claims. However, this issue was not raised by BP America in its motion for summary judgment, and therefore, in its ruling, the trial court legally erred in granting the summary judgment on this issue. Louisiana Code of Civil Procedure article 966(F)(1) mandates that "summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." Furthermore, it is legal error for the trial court to grant summary judgment on the basis of an issue not raised by the parties. See **Rhodes v. AMKO Fence & Steel Co., LLC**, 2021-0019 (La. App. 5 Cir. 10/28/21), 329 So.3d 1112, 1123; **Cutrone v. English Turn Property Owners Association, Inc.**, 2019-0896 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1218. Nonetheless, despite the trial court's legal error in this regard, the standard of review on summary judgment requires this court to conduct a *de novo* review of BP America's motion for summary judgment and to determine whether there is any genuine issue of material fact and whether BP America was entitled to judgment as a matter of law dismissing Mr. Bailey's claims against it for breach of the implied lease obligation under the 1948 lease to not operate excessively and unreasonably. See **Libertas Tax Fund I, LLC v. Laiche,**

---

[10] The trial court had previously dismissed all of Mr. Bailey's tort claims against BP America in an August 13, 2021 judgment.

2021-0330 (La. App. 1 Cir. 12/22/21), 340 So.3d 236, 242-243 n.6, <u>writ denied,</u> 2022-00160 (La. 4/12/22), 336 So.3d 82.

BP America's motion for summary judgment is based on a provision in La. R.S. 30:29 as enacted by Act 312. Act 312 was passed by the Louisiana Legislature in 2006 to protect the public interest in litigation by requiring court-supervised, defendant-funded cleanup for all environmental damage claims resulting from oilfield operations. <u>See</u> 2006 La. Acts No. 312. In 2014, Act 312 was amended and La. R.S. 30:29, as amended,[11] provides, in pertinent part:

> H. (1) This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Any award granted in connection with the judgment for additional remediation in excess of the requirements of the feasible plan adopted by the court is not required to be paid into the registry of the court.
>
> (2) Damages that may be awarded in an action under this Section shall be governed by the provisions of Subsection M of this Section. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.
>
> * * *
>
> M. (1) In an action governed by the provisions of this Section, damages may be awarded only for the following:
>
> (a) The cost of funding the feasible plan adopted by the court.
>
> (b) The cost of additional remediation only if required by an express contractual provision providing for remediation to original condition or to some other specific remediation standard.
>
> (c) The cost of evaluating, correcting or repairing environmental damage upon a showing that such damage was caused by unreasonable or excessive operations based on rules, regulations, lease terms and implied lease obligations arising by operation of law, or standards applicable at the time of the activity complained of, provided that such damage is not duplicative of damages awarded under Subparagraph (a) or (b) of this Paragraph.

---

[11] As originally enacted, La. R.S. 30:29 did not include section (M) on damages. In 2014, La. R.S. 30:29 was amended by 2014 La. Acts No. 400 to amend section (H) and add section (M).

10

(d) The cost of nonremediation damages.

Legislation is the solemn expression of the will of the legislature. La. C.C. art. 2; **First National Bank, USA v. DDS Construction, LLC**, 2011-1418 (La. 1/24/12), 91 So.3d 944, 953. The determination of the legislature's will must start with the language of the statute itself. **First National Bank**, 91 So.3d at 953. The words used must be interpreted as they are generally understood. La. C.C. art. 11; **First National Bank**, 91 So.3d at 953. The rules of statutory construction provide that when the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature's intent. See La. C.C. art. 9; see also La. R.S. 1:4. When the language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So.2d 16, 27.

This statute is clear and unambiguous—La. R.S. 30:29(H) provides that "[d]amages that may be awarded in an action under this Section shall be governed by the provisions of Subsection M," which lists them as: the regulatory level MFP (La. R.S. 30:29(M)(1)(a)), additional remediation pursuant to an express contractual provision (La. R.S. 30:29(M)(1)(b)), the cost of repairing environmental damage caused by unreasonable or excessive operations *based on "implied lease obligations"* where not duplicative with the first two categories (La. R.S. 30:29(M)(1)(c)), and non-remediation damages (La. R.S. 30:29(M)(1)(d)).

In its motion for summary judgment, BP America relies on the Louisiana Supreme Court's opinions in **State v. Louisiana Land & Exploration Co.**, 2012-0884 (La. 1/30/13), 110 So.3d 1038 (**LL&E I**), and **LL&E II**, 347 So.3d at 693, to support its contention that pursuant to La. R.S. 30:29, Mr. Bailey cannot recover remediation damages exceeding the costs of the MFP unless there is an express

11

contractual provision providing for such. In **LL&E I**, which involved prescription issues and awards of damages for the remediation of contaminated property, the supreme court considered La. R.S. 30:29 before its amendment in 2014 and held that the landowner could recover damages in excess of those needed to remediate the property to state regulatory standards, even in the absence of a contractual provision; moreover, it held that the damages did not need to be deposited into the court registry. **LL&E I**, 110 So.3d at 1054.[12] However, in **LL&E II**, a later appeal in the same case, the supreme court overturned its ruling in **LL&E I**, stating that it "incorrectly held that excess remediation damages were allowed under Act 312" and concluded that a landowner's recovery is limited to a regulatory cleanup of contaminated property, unless the parties had expressly contracted for remediation in excess of Act 312's requirements. **LL&E II**, 347 So.3d at 691, 693. BP America relies on the supreme court's statements, "We need look no further than the plain language of Act 312 itself to recognize this Court's prior error. We also note the Legislature cured this Court's error by amendment in 2014 to La. R.S. 30:29(M) (2014)." (footnote omitted). **LL&E II**, 347 So.3d at 691. However, BP America's reliance on **LL&E I** and **LL&E II** is misplaced. In those cases, the supreme court did not interpret the version of La. R.S. 30:29 that is applicable in this case, which is the statute as amended in 2014. See **State v. Louisiana Land & Exploration Co.**, 2020-00685 (La. 6/1/22), 339 So.3d 1163, 1164 n.1 (**LL&E III**).[13]

In conducting a *de novo* review of BP America's motion for summary judgment, we initially note that Mr. Bailey's claim for damages against BP America for breach of implied obligations under La. R.S. 30:29(M)(1)(c) is not duplicative of

_____

[12] In **LL&E I**, 110 So.3d at 1054, the court also noted that La. R.S. 30:29 "does nothing to the substantive rights of the landowner, whether arising out of (1) the implied obligations of the mineral lease under the Civil Code or (2) the implied obligation arising out of La. R.S. 31:122 if the landowner can show a mineral lessee has acted unreasonably or excessively under the lease."

[13] In **LL&E III**, the supreme court granted rehearing of **LL&E II** and affirmed its ruling in **LL&E II**. **LL&E III**, 339 So.3d at 1166.

or based on a claim for damages under La. R.S. 30:29(M)(1)(a) or (b). Mr. Bailey's claim for damages is not based on the costs of funding the MFP under La. R.S. 30:29(M)(1)(a). As to his claim for additional remediation pursuant to an express contractual provision pursuant to La. R.S. 30:29(M)(1)(b), the trial court determined in its August 23, 2021 judgment that the 1948 lease did not contain an express provision providing for remediation to original condition or to some other specific remediation standard.

In addition, BP America contended that it should not be liable on a contract claim for unreasonable or excessive operations because Pan-American did not engage in the operations under the 1948 lease; rather, the operations were only conducted by Pan-American's assignees, who admitted liability for some of the damages.[14] However, La. R.S. 30:29(M)(1)(c) does not require that the damages sought under an implied obligations claim be caused by the operations physically performed by the party found responsible. Rather, La. R.S. 30:29(M)(1)(c) provides that damages may be awarded for "[t]he cost of evaluating, correcting or repairing environmental damage upon a showing that such damage was caused by unreasonable or excessive operations ...." This statute does not require that those unreasonable or excessive operations be performed by a particular party in order for the damages to be awarded. Indeed, La. R.S. 30:29(C)(1) contemplates any route to legal responsibility for those damages: "If at any time during the proceeding a party admits liability for environmental damage or the finder of fact determines that environmental damages exists and determines the party or parties who caused the damage **or who are otherwise legally responsible therefor** ...." (Emphasis added). Thus, this statute does not abrogate the standards of legal responsibility applicable to original lessees in the case of a subsequent assignment. In addition, we note that

_____

[14] It is also undisputed that BP America did not actually drill or operate any of the wells that were authorized under the 1948 lease, which is the only lease that could affect Mr. Bailey's recovery against BP America as one of the successors in interest to the original lessee, Pan-American.

13

there is no written release by the Bailey family that would discharge Pan-American's (and therefore BP America's) obligations as the original lessee under those assignments. See La. R.S. 31:129 ("An assignor or sublessor is not relieved of his obligations or liabilities under a mineral lease unless the lessor has discharged him expressly and in writing.").

We now consider whether the facts that SNG and Chevron admitted limited liability under La. R.S. 30:29(M)(1)(c) (and La. C.C.P. art. 1563) and were referred to the LDNR to create an MFP, which was later adopted by the trial court, and that BP America never actually drilled or operated any wells on the Bailey property would preclude the claim under La. R.S. 30:29(M)(1)(c). We note that Chevron and SNG admitted to liability for some—but not all—of the environmental damage, and they did not admit to liability for any of Mr. Bailey's private damage claims. While a party or parties may admit to liability for all or some of the damages claimed by a plaintiff, it logically follows that only those parties/claims are subject to the MFP, and that a non-party to an MFP cannot take advantage of that MFP, and further, that a plaintiff can still pursue private claims, or even those not covered by the MFP, to demonstrate that defendants are liable for damages not admitted to by a party. See **Hero Lands Company, LLC v. Chevron USA, Inc.**, 2022-0383 (La. App. 4 Cir. 5/22/23), 382 So.3d 271, 285, writ granted in part on other grounds and remanded, 2023-01050 (La. 10/10/23), 370 So.3d 1062; **State v. Louisiana Land & Exploration Co.**, 10-1341 (La. App. 3 Cir. 2/1/12), 85 So.3d 158, 162, affirmed, 2012-0884 (La. 1/30/13), 110 So.3d 1038 (**LL&E I**).

Based on a *de novo* review of BP America's motion for summary judgment, BP America failed to establish that it was entitled to judgment as a matter of law dismissing Mr. Bailey's claims against it for breach of the implied lease obligation under the 1948 lease to not operate unreasonably or excessively. Therefore, we find that the trial court erred in granting summary judgment in favor of BP America and

14

dismissing Mr. Bailey's claims for breach of implied obligations against BP America.

## ANSWER TO APPEAL

BP America filed an answer to Mr. Bailey's appeal, requesting that this court affirm the August 29, 2022 judgment of the trial court on the basis that Mr. Bailey's claims for excess remediation are barred under Act 312 as interpreted by the Louisiana Supreme Court in **LL&E II**. Considering our discussion interpreting and applying the 2014 amendment of Act 312, we find that the relief sought in BP America's answer to this appeal should be denied as moot. See **Cook v. Rigby**, 2019-1475 (La. App. 1 Cir. 11/25/20), 316 So.3d 482, 488, writ denied, 2020-01493 (La. 3/9/21), 312 So.3d 588.

## CONCLUSION

For the assigned reasons, we deny BP America Production Company's answer to this appeal as moot. We hereby reverse the trial court's August 29, 2022 and August 30, 2022 judgments granting summary judgment in favor of BP America Production Company and dismissing all claims of James J. Bailey, III, individually and as the representative of his mother's and grandmother's successions, against BP America Production Company. All costs of this appeal are assessed to BP America Production Company.

**REVERSED AND REMANDED; ANSWER TO APPEAL DENIED AS MOOT.**

15

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0564

LOUISIANA WETLANDS, LLC, AND NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION, ET AL

**WOLFE, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent for the reasons initially expressed in our original opinion, **Louisiana Wetlands v. Energen Resources Corp.**, 2023-0564 (La. App. 1st Cir. 4/19/24), 390 So.3d 378. Additionally, I emphasize that the scope of a mineral lessee's obligations, pursuant to the Civil Code and Mineral Code (to return the leased property in a condition that is the same as when it was delivered), has been modified by subsequent legislation found in La. R.S. 30:29, also known as Act 312. Sections (H) and (M) of La. R.S. 30:29 reflect that, absent an express contractual provision, damages may *only* be awarded up to the amount necessary to remediate the property to state regulatory standards. Since it is undisputed that BP America never operated on the property, there is a lack of evidence proving the essential element of causation in Mr. Bailey's claim for damages caused by "unreasonable or excessive operations" based upon implied lease obligations. Thus, I disagree with the majority's interpretation of Act 312 as it applies to the facts of this case, and I would affirm the trial court's grant of summary judgment in favor of BP America and the dismissal of Mr. Bailey's claims against BP America.

1

# COURT OF APPEAL, FIRST CIRCUIT

## STATE OF LOUISIANA

RE: Docket Number 2023-CA-0564

James J. Bailey, III and New 90 LLC

- - Versus - -

Energen Resources Corporation, Successor in Interest to
Minatome Corporation and Total Minatome Corporation,
Chervron U.S. A., Inc., Successor in Interest to Chevron
Oil Company and California company, Southern Natural
Gas Company, LLC, successor in Inter

16th Judicial District Court
Case #: 130527
St. Mary Parish

On Application for Rehearing filed on05/03/2024by James J. Bailey, III and New 90 LLC

Rehearing _____ Granted _____

_____
Jewel E."Duke" Welch Jr.

_____
Elizabeth Wolfe

KTS_by JEW
_____
Katherine Tess Stromberg

Wolfe, J. dissents and would
deny the Application for Rehearing.

Date _____ JUN 2 1 2024 _____

_____ Dane S. Kuy _____

Rodd Naquin, Clerk